DUDNEY *v.* WILSON.

Opinion delivered November 18, 1929.

*Marsh, McKay & Marlin* and *Patterson & Rector,* for appellants.

*R. E. Wiley,* for appellee.

HUMPHREYS, J. This suit was brought by appellants against appellee, in the Second Division of the Chancery Court of Union County, to charge with a trust the one-half interest acquired by him in the east one-half of the northeast quarter of the northeast quarter of section 16, township 17 south, range 16 west, in Union County, Arkansas, under a redemption deed from the State of Arkansas to Mary E. Benton and Susan R. Perry, as sole heirs of W. H. Tatum, deceased.

The gist of the complaint is that, after accepting employment from them to procure the sale of said land by proceedings in the county court of said county provided by statute for sales of sixteenth section lands, and, after filing the petition for that purpose in said court, he redeemed same for the Tatum heirs, under prior employment by them, from the State of Arkansas, that had acquired title thereto under the overdue tax sale in Union County in 1883, upon information acquired by him as to the State's title in the course of his employment by appellants, and thereby defeating or preventing the accomplishment of the purposes for which they employed him.

Appellee interposed the defenses that he accepted the employment to procure a judicial sale of the said land through a mutual mistake that it was a part of the sixteenth section school lands which had never been sold, and that, after filing a petition for the public sale thereof

under his employment, he discovered from an independent source that it was State land acquired under the overdue tax sale of 1883, and land in which he owned an interest by virtue of a contract to recover same for Mary E. Benton and Susan R. Perry as heirs of their father, W. H. Tatum, and that, immediately after making the discovery, he notified appellants of his employment by the Tatum heirs, severed the relationship of attorney and client with them, and redeemed the land for said heirs. The cause was submitted to the court upon the pleadings and testimony introduced by the respective parties, which resulted in a dismissal of appellants' complaint for the want of equity, from which is this appeal.

The record reflects that, at the time of the employment of appellee by appellants, the land in question was not a part of the unsold sixteenth section school lands of the State, but had been sold prior to the Civil War to W. H. Tatum, who allowed it to forfeit for taxes, and that the State acquired title thereto under the overdue tax sale in Union County in 1883.

The testimony is in conflict as to whether the employment was to obtain a public sale of the land provided it was a part of the unsold sixteenth section school lands, or whether broad enough to include the procurement of a public sale thereof if acquired by the State under the overdue tax sale of 1883. Appellee proceeded, however, by petition under § 9104 of Crawford & Moses' Digest, providing for sales of original sixteenth section school lands.

The testimony is also in conflict as to whether, after filing the petition, appellee obtained the information that the State acquired title thereto under the overdue tax sale of 1883 in the course of his employment by appellants, or whether he acquired the information from an independent source.

The testimony is also in conflict as to whether, immediately after discovering the source of the State's title to the land, and that it was the particular land Mary E.

Benton and Susan R. Perry had employed him to redeem for them prior to his employment by appellants, appellee fully revealed all the information he had acquired, and that he at once severed his connection or fiduciary relationship with them. Appellants admit that he told them that the land was not a part of the original sixteenth section school land, and that it was land that he had theretofore been employed to redeem for the Tatum heirs, but they disputed his claim that he severed his fiduciary relationship with them; they also admit that they suggested that he procure a deed to the land from the Tatum heirs to them in order that they might redeem it themselves. Appellee testified that, after revealing the source of the State's title to them and informing them that he intended to redeem the land for his other clients, he agreed to their proposal to get a deed from his other clients to them, provided they would pay his other clients the fair market value thereof, and that they all drove out to view the land in order to determine, if possible, the fair market value thereof; that, after inspecting it, Dudney offered $12,000 for it, stating that he had tentatively sold the land, if they acquired it at the sale, for that sum; that he told Dudney the land was worth from $500 to $1,000 an acre, which price appellants refused to consider. Dudney does not dispute appellee's testimony in this particular. It stands in the record as an undisputed fact. We deem it unnecessary to decide where the weight is as to the disputed facts, as the undisputed fact just related is sufficient within itself to sustain the decree of the trial court. The rule of law governing one under fiduciary relationship or duty is succinctly and tersely stated in the case of *Trice* v. *Comstock,* 121 Fed. 620, as follows:

"Every agency creates a fiduciary relation, and every agent, however limited his authority, is disabled from using any information or advantage which he acquires through his agency, either to acquire property or to do any other act which defeats or hinders the efforts of

his principal to accomplish the purpose for which the agency was established.''

Under this rule any violation or miscarriage of the trust must defeat or prevent the purpose of the trust before the principals can follow any property derived therefrom by their agent who claims same. The purpose of the trust in the instant case was that appellants might gain or obtain the privilege of buying the particular land in question at a public sale. This meant that they would have to bid something like the value of the land if they procured it in that way, for the land was valuable as an oil prospect. Appellants were offered the land for the fair market value, and refused to consider the offer. This fact differentiates the instant case from the Comstock case, *supra,* upon which appellants rely for a reversal of the decree of the trial court.

No error appearing, the decree is affirmed.