WITMER *v.* ARKANSAS DAILIES, INC.

4-6426                                          151 S. W. 2d 971

Opinion delivered May 12, 1941.

*M. A. Hathcoat, Karl Greenhaw* and *O. E. Williams,* for appellant.

*House, Moses & Holmes* and *Shouse & Shouse,* for appellees.

*Chas. D. Frierson, Charles Frierson, Jr.,* and *J. J. McCaleb, amici curiae.*

HUMPHREYS, J. Appellee, Arkansas Dailies, Inc., is a Tennessee corporation having a capital stock of $10,000. C. E. Palmer and members of his family owned all the corporate stock, except $700 of the stock acquired by appellant during his ten years employment by appellee as manager of his corporation. Appellee, corporation, was organized for the purpose of soliciting advertising from various manufacturers in the east and north and placing same in newspapers which appellee secured as patrons of its organization. The remuneration it received from its patrons was a percentage of the advertising fee which the various newspapers collected from the advertisers for advertisements which were procured through its representatives in the east and north and perhaps other parts of the country.

C. E. Palmer resided in Texarkana, Texas, and was engaged in other business and employed appellant to manage the business in which appellee corporation was engaged at a fixed annual salary together with bonuses and commissions. Appellant's chief duty was to obtain as many newspapers as possible as patrons of appellee, corporation, and to make and supervise contracts with them. His position was designated as that of manager of the corporation, and he also acted as secretary and treasurer and had charge of the office in Memphis and the employees of said corporation. He was also selected as a director of appellee, corporation, and served in that capacity with the other two directors, C. E. Palmer and his son-in-law, W. E. Hussman. Under the management of appellant the business expanded during the ten year period of his employment from about eight papers to fifty-four papers or patrons. Appellant during the last half of his employment had in mind a desire to acquire an interest in the business as evidenced by a conversation he had with a man by the name of Murray, an intimate friend, but he never revealed this desire to Palmer or anyone connected with appellee corporation. At the time of his employment by Palmer as manager of appellee, corporation, no definite term of employment was

agreed upon so it partook of the nature of a contract cf employment at will. In other words, appellee had the right to discharge and appellant had the right to resign when either decided to do so. There was no provision in the contract prohibiting appellant, in case of his resignation, from setting up an independent business of his own of the same character of that of appellee or from soliciting the patrons or customers of appellee from becoming his customers in an independent business.

The time arrived for an arrangement between appellee and appellant for another year's employment. In response to a letter from C. E. Palmer, appellant, appellee and W. E. Hussman, the three directors met in Hot Springs, Arkansas, to discuss appellant's remuneration, his salary and bonus arrangement, but no agreement could be reached. Appellant wanted more salary than the others were willing to pay him, and then Palmer asked him what kind of arrangement he was willing to make, and appellant responded that if he remained with the corporation he wanted it to give him a half interest in the business and stated that unless they gave him a half interest therein he would resign, organize a similar company of his own and take all its business with him except the patrons or papers owned by Palmer. This proposal on his part was declined, whereupon appellant resigned as manager, secretary and treasurer of appellee, corporation, effective immediately. At the time, appellant proposed to sell his stock to Palmer, but Palmer replied that he would not buy the stock because the corporation was not going to furnish the capital for him to set up an independent or competitive business. Something was said about him resigning as a director, and he said that he would wait until a little later, and he did resign as a director on the 13th day of December, 1940, and his resignation was accepted.

Both appellant and C. E. Palmer returned to Memphis, and each mailed out a notice to all of the patrons to the effect that appellant had resigned and was no longer connected with appellee corporation. This notice was mailed out on October 9, 1939. In appellant's letter to the newspapers in addition to stating that he had sev-

ered his connections with appellee corporation he also stated that he was going into the same business for himself with headquarters in Memphis and would operate his new business under the name of Wallace Witmer Company and would soon call upon them. Following the notice to the patrons by appellee corporation, it sent out to the patrons a rather lengthy letter confirming the notice it had sent out on October 9, and saying to the patrons that appellee, corporation, had employed H. K. Howard as its general manager who was thoroughly experienced in the business. It also stated in the letter that W. E. Jordan, the assistant manager, would continue on the staff. It also stated that appellant would not likely be able to successfully organize an agency that would render service to them equal to the service it had rendered, and that it would be able to render, and advising them that it would not be wise to form a new connection. It was also stated that the new general manager would call upon them and discuss matters in detail with them. From that time on it was a race between appellant and the new general manager as to which agency would get their business after their contracts expired with appellee. Appellee secured contracts with a Fayetteville paper, a Harrison paper, a Jonesboro paper, a Batesville paper and others. Later the appellee corporation persuaded the Fayetteville Democrat Publishing Company to make a contract with it and give it an indemnifying bond to protect it against any damages that might result from a breach of its contract with appellant. The contracts with both the Fayetteville Democrat Publishing Company and the Times Publishing Company at Harrison were entered into with appellant on December 21, 1939, after appellant had resigned as manager, secretary and treasurer and director of appellee, corporation, and was not to take effect until the expiration of their respective contracts with appellee corporation.

Appellant organized his new company and moved into offices in the same building near the offices occupied by appellee corporation. He did not take out any of the furnishings of the office, or any of the files or any of the contracts it had with any of the papers, but later did

employ Mrs. Herriot who had been acting in the capacity of assistant secretary of appellee, corporation, for about ten years. He also procured the same eastern and northern representatives who had been procuring advertisements for appellee, corporation, as his representatives to procure advertisements for the new company he established. The form of contract he used in making his agreements with the papers was in substance the same kind of a contract that appellee used in contracting with its papers.

The business in which appellee was engaged involved no trade secrets, trade marks, etc. It was technically a service corporation.

About all that appellant took with him when he severed his connections with appellee was the experience and knowledge he had acquired in acting as manager and employee of appellee and the acquaintanceship he had made with appellee's patrons during the time he had served it.

Growing out of appellant's activities in soliciting business from the patrons of appellee at the expiration of their contracts with it, appellee filed a suit in the chancery court of Boone county seeking an injunction against appellant to prevent him from securing such contracts for services from any of appellee's patrons. Incidental to the main purpose of the injunction proceeding, the Democrat Publishing Company of Fayetteville and the Times Publishing Company of Harrison became parties to the suit involving the validity of any contract either of the papers had made with appellant, and the contracts he had made with them were asked to be cancelled.

Appellant filed an answer denying the material allegations of the complaint claiming that he was within his legal rights in soliciting business from the patrons of appellee after the expiration of their contracts with it.

After hearing the testimony responsive to the issues involved the chancery court rendered a decree canceling the contracts appellant had made with the Democrat Publishing Company and the Times Publishing Company and enjoined appellant from soliciting business from or enter-

ing into any agreement with appellee's patrons for a term of one year, from which decree an appeal has been duly prosecuted to this court.

Appellee prosecuted a cross-appeal upon the ground that under the evidence the court should have rendered a decree prohibiting appellant from soliciting business or entering into contracts with appellee's former patrons for a term of three years.

It would abridge competition in business, the life of trade, if an employee who had rendered services to a business of any character for a long period of time and who had helped build up a business on account of performing his duties well should be prohibited after severing his relationship with a business concern from establishing and prosecuting a similar business in the same territory or field in which his employer had done business, especially where the employee had not contracted when entering into the employment to refrain from establishing an independent business of like nature. Legitimate competition should be encouraged rather than restricted, and, in the aid of the freedom of employment, combinations and monopolies which would result in the restraint of trade should not be tolerated in a democratic form of government. Certain restrictions have been imposed upon employees when severing their relationship with an employer. For example where the particular business in which he had been employed has trade secrets an employee is not permitted to set up an independent business of a similar nature and use the trade secrets of his employer or confidential information received from his employer in the new or independent business in which he engages, but it is allowable for him to use his experience and knowledge gained during the period of his employment in his independent business. The experience and knowledge he has acquired as an employee in no sense becomes the property of his employer. Of course during the period of his employment he must be loyal to his employer and not attempt to set up a competitive business with the business of his employer. It is said on page 219 in 39 Columbia Law Review, that: "After leaving the corporation a director may use any experience he

gained while working for the corporation. Similarly, once his term is ended, he may do what was prohibited to him before.''

In the instant case it is not shown that appellant, in the prosecution of his new business, used any confidential information, trade secrets or anything else that he had obtained from appellee during the period of his service with it. It was said, in substance, in the case of *H. W. Gossard Company* v. *Helene C. Crosby,* 132 Iowa 155, 109 N. W. 483, 6 L. R. A., N. S., 1115, that: ''An employee, on leaving his employer's service is guilty of no legal wrong in profiting by the experience and knowledge gained in the service.''

In the instant case it is clear that appellant severed all the connections he had with appellee corporation, except that of nominal director, until the board could meet and accept his resignation as director. His resignation as manager, secretary and treasurer had been accepted and his resignation as director had also been accepted, before he entered into any contracts with the patrons of appellee corporation. No fiduciary relationship whatever existed between him and appellee, corporation, when the injunction in this case was issued prohibiting him from soliciting business from or entering into contracts for furnishing appellee's patrons with advertising matter. Even then he was simply trying to obtain contracts for such service with appellee's patrons after their contracts with appellee had expired. This was not making use of any trade secret or confidential information he acquired during his services with appellee corporation. He had never acquired any financial interest in the business of appellee, corporation, except the purchase of $700 worth of stock in a concern that had $10,000 capital stock. We do not think it would be sound to say that a minority stockholder in any concern might not engage in an independent similar business even though competitive in nature.

In the case of *New York Automobile Company* v. *Franklin,* 49 Misc. 8, 97 N. Y. Supp. 781, the court said: ''Mr. Wilkinson as an employee of the plaintiff had,

under the circumstances, a right to leave its service when he did. Concededly, he had no right to take with him any of its tangible property such as the model, the patterns, drawings; and he did not. Possibly, he had no right to use any designs which he might remember, and this he did not do. But he, as well as everyone else, had a right to plan and use a four cylinder air cooled engine. His experience, his skill, his unmatured thoughts and designs were his own. That they had been gained at the expense of the plaintiff certainly gave the latter no legal right to them. If it had possessed any unpublished inventions which Mr. Wilkinson was now using, another question would arise. But it had not. All it possessed on the 30th day of June was an unperfected model of an engine; and this it still has. Nor have Mr. Wilkinson and Mr. Brown wronged it by any act as directors. True, the one, after he left the plaintiff, began at once to build a four-cylinder engine for the other, and this was ultimately sold to a corporation of which they were both directors. But I know of no rule which prohibits a director of a corporation engaging in a business similar to that carried on by the corporation, either in his own behalf or with another corporation of which he is likewise a director. True, he owes to his stockholders the most scrupulous good faith. He may not deal with the trust property for his own advantage. He may not deal in his own behalf in respect to any matter involving his rights and duties as a director. He may not seek his own profit at the expense of the company or its stockholders. But, so long as he violates no legal or moral duty which he owes to the corporation or to its stockholders he is entirely free to engage in an independent, competitive business.''

We think the case of *El Dorado Laundry Company* v. *Ford*, 174 Ark. 104, 294 S. W. 393, comes nearer fitting the facts in this case than any case we have read except the case of *Fulton Grand Laundry Company* v. *Johnson*, 140 Md. 359, 117 Atl. 753, 23 A. L. R. 420. In the El Dorado Laundry Company case, *supra*, it was said by the late Chief Justice HART, that: ''The facts in this case bring it within the rule laid down in *Fulton Grand Laun-*

*dry Co.* v. *Johnson,* 140 Md. 359, 117 Atl. 753, 23 A. L. R. 420. It was held that the names of the patrons of a laundry on a particular route did not constitute a trade secret which will be protected by injunction so as to prevent a driver employed on such route from utilizing it and soliciting the patronage of such persons when he leaves the service of his employer and enters business for himself. In a note at the end of the case, it is said that in a majority of the cases which have passed on the question, it is held that in the absence of an express contract, on taking a new employment in a competing business, an employee may solicit for a new employer the business of his former customers, and will not be enjoined from so doing at the instance of his former employer. We think that under the principle announced in these cases and under the facts in the present case, the chancellor properly held that the plaintiff was not entitled to the injunctive relief asked, and that his decree dismissing the complaint of the plaintiff for want of equity should be affirmed. It is so ordered."

To give a concrete illustration, certainly the manager of a large department store could resign or sever his connection with it and take employment as manager of another at an increased salary or he could resign and establish a department store of his own just so he did not use in the prosecution of his new business any trade secrets or confidential information he had received from his former employer, provided, however, he had not contracted with his former employer not to establish an independent similar business within a reasonable period of time after severing his connections with his former employer.

We are struck with an argument made in the *amici curiae* brief filed by the Friersons as an aid to this court in the instant case. It is said in their brief that: "Every day we know that popular automobile salesmen, for instance, quit a Chevrolet agency and go into the employment of a Ford agency or *vice versa,* and the new employers advertise that the salesman has recently come into the employment of the new master and will be glad to see his old friends at the new address. The same

transactions are common regarding retail merchandise salesmen of ability. The old common law idea of apprenticeship was based upon the thought that a young man could apprentice himself until he had learned a trade or an art, and after he had learned it, he was expected to start in business for himself; and if the community was small, his activities would necessarily be in competition with his former master. Each clerk in the simple old days expected to save up, make friends and later launch his own business, which almost necessarily would compete with his former employer.''

We think under the facts in this case the trial court erred in enjoining appellant from entering into a separate competitive business with that of appellee corporation, and also in canceling the contracts appellant had made with the Fayetteville Democrat Publishing Company and the Times Publishing Company.

On account of the error indicated, the decree is reversed and remanded with directions to dissolve the injunction and dismiss appellee's complaint for the want of equity.

McHANEY and HOLT, JJ., dissent.

McHANEY, J. (dissenting). The majority opinion has substantially and correctly stated the facts, but, in my opinion has clearly misapplied the law to the facts, which are without substantial dispute. Appellee, Arkansas Dailies, Inc., is a small corporation with a capital stock of $10,000, all of which has been expended in developing and building a purely service organization, with the exception of a small amount invested in office equipment. Its assets are intangibles, consisting of contracts with daily newspapers in Arkansas and in neighboring states to supply them with foreign advertising which it solicited and secured from manufacturers and others throughout the country by agents in different cities. For ten years prior to October 9, 1939, appellant had been its general manager, secretary and a director, beginning his employment in 1929. From the beginning he was placed in full charge of the offices and management of the business upon a salary and commission. It was his business and

his alone, as well as his duty, to solicit and procure contracts with publishers in Arkansas and in other states, to keep in close touch with them for his company and to render to it full time, faithful and loyal service. This he apparently did for many years and the business grew from one with 8 or 9 clients to one with 54 clients, and all of them knew the Arkansas Dailies only through him, and, to them, he was in fact the Arkansas Dailies. In other words, he was the company. He was paid a good salary, did a good job and had the entire trust and confidence, not only of the company, but of its clients, who were, in effect, his clients. But, some 5 or 6 years before he severed his connection with appellee, he determined to go into business for himself in competition with appellee. One of his witnesses, Donald Murray, testified on cross-examination as follows: ''Witmer first talked to me about going into business in competition to the Arkansas Dailies about six years ago. He said he would like to buy Arkansas Dailies. He talked to me about it confidentially. . . . Witmer and I were close friends.'' So, it appears that, for several years before his resignation as general manager, he had carefully planned his action to get control of appellee. At the meeting in Hot Springs on October 8, 1939, appellant told Palmer and Hussman that they would not be able to agree on plans for future operation, that he had a demand to make. If they would give him 50 per cent. of the stock free of charge, he would remain with the company; otherwise he would quit, form a company of his own, and, within one year, would take away all the clients of the company except those owned by Palmer. Palmer testified: ''Witmer said if you will give me a half interest in the business, I will stay with the company. If you don't I will go out and take away all these papers Arkansas Dailies represents except those you own, and within a year you will have to merge with me on that basis.'' Hussman testified to the same effect, and appellant does not deny this testimony.

The law is not in dispute, generally speaking, only its application. The general rule is thus stated in 64 A. L. R. 784: ''Generally it is held that directors or officers of a corporation are not by reason of the fiduciary re-

lationship they bear toward the corporation and the stockholders thereof precluded from entering into and engaging in a business enterprise independent from, though similar to, that conducted by the corporation itself, provided that in doing so they act in good faith and do not interfere with the business engaged in by the corporation." 19 C. J. S., title "Corporations," p. 160, states that such a person, a director or officer, "may not wrongfully use the corporation's resources therein, nor may he enter into an opposition business of such a nature as to cripple or injure the corporation." And 13 Am. Jur., p. 953, § 999, states they may do so, "Provided in doing so they act in good faith and do not interfere with the business enjoyed by the corporation."

So, the general rule is well settled and the difficulty arises in applying the rule to the facts in hand. The author of the majority opinion also wrote the opinion in *Dudney* v. *Wilson,* 180 Ark. 416, 21 S. W. 2d 615. In the case at bar it is stated that no fiduciary relation existed between appellant and appellee corporation, but in that case, *Trice* v. *Comstock,* 121 Fed. 620, 61 L. R. A. 615, was cited and quoted from as follows: "Every agency creates a fiduciary relation, and every agent, however limited his authority, is disabled from using any information or advantage which he acquires through his agency, either to acquire property or to do any other act which defeats or hinders the efforts of his principal to accomplish the purpose for which the agency was established." That was good law in *Dudney* v. *Wilson, supra.* I think it is still the law and the majority opinion has departed from it. If "every agency creates a fiduciary relation," can any one doubt that appellant was an agent or vice principal of appellee corporation and was, therefore, a fiduciary as to it? And if "every agent, however limited his authority, (appellant's authority was unlimited) is disabled . . . to do any other act which defeats or hinders the effect of his principal to accomplish the purpose for which the agency was established," why is it that the majority now say appellant may terminate his agency, go out and destroy the business of appellee, which it has paid him to build up over a period of

ten years? See, also, *Lybarger* v. *Lieblong*, 186 Ark. 913, 56 S. W. 2d 760; *Harris* v. *Gilmore*, 197 Ark. 641, 124 S. W. 2d 810.

In that case of *Trice* v. *Comstock*, Trice and another were real estate brokers and they employed Comstock and Reitmeyer as their agents. They had listed for sale a large tract of land. By reason of his agency or employment, Comstock acquired information of this land, the owner, the price and terms of sale. He quit the service of Trice and his partner and entered into business himself. Later he made a sale of this large tract of land and suit was brought by his former employers to have a trust declared upon the fruits of the transaction. Judge SANBORN, speaking for the court of appeals, 8th circuit, 121 F. 622, 61 L. R. A. 176, reversed the decree of the district court and ordered a decree for appellants. After stating that "the law peremptorily forbids every one who, in a fiduciary relation, has acquired information concerning or interest in the business or property of his correlate from using that knowledge or interest to prevent the latter from accomplishing the purpose of the relation," continues by defining what is meant by a fiduciary relation as follows: "And, within the prohibition of this rule of law, every relation in which the duty of fidelity to each other is imposed upon the parties by the established rules of law is a relation of trust and confidence. The relation of trustee and *cestui que trust*, principal and agent, client and attorney, employer and an employee, who through the employment gains either an interest in or a knowledge of the property or business of his master, are striking and familiar illustrations of the relation. From the agreement which underlies and conditions these fiduciary relations, the law both implies a contract and imposes a duty that the servant shall be faithful to his master, the attorney to his client, the agent to his principal, the trustee to his *cestui que trust*, that each shall work and act with an eye single to the interest of his correlate, and that no one of them shall use the interest or knowledge which he acquires through the relation so as to defeat or hinder the other party to it in accomplishing any of the purposes for which it was

created." Later in the opinion, the learned jurist says: "Nor is it any defense to the suit to enforce this trust that the agency had terminated before the confidence was violated. The duty of an attorney to be true to his client, or of an agent to be faithful to his principal, does not cease when the employment ends, and it cannot be renounced at will by the termination of the relation. It is as sacred and inviolable after as before the expiration of its terms."

See, also, *Southwest Pump & Machinery Co.* v. *Forslund,* 226 Mo. App. 262, 29 S. W. 2d 165. There the court stated the facts as follows: "Southwest Pump & Machinery Company was first a partnership composed of defendant Forslund and two associates. Later it was organized into a corporation, of which Forslund was an officer and general manager. During a long period of time and by the expenditure of much money a favorable business and reputation were built by advertising, personal solicitation and otherwise, and many customers established. Valuable contracts with various concerns for the sale and disposition of their products were acquired. Defendant decided he wanted the business and first made some move to buy it. Suddenly he quit his position as manager and entered business for himself under a scheme to deprive the corporation of its contracts with its various patrons and to convert such a business to his own use, inducing the corporation's patrons to cancel their contracts with the corporation and establish business relations with him. He remained an officer of the corporation for some months after establishment of his own independent business." The trial court enjoined the defendant from pursuing such a course of conduct for three years, and the Kansas City court of appeals affirmed the decree. I can see no valid distinction in fact or law to be made between that case and this. It was there said: "As a director and as president of the corporation he occupied a fiduciary relation to the company and to its stockholders. His position was one of trust. He was bound to act with fidelity and to subordinate his personal interest to the interest of the company should there be a conflict. He was required at all times to exercise the

utmost good faith toward the corporation. His position is treated in the same way as that of a trustee or guardian, and he is not permitted to assume a position inconsistent with this relation. The evidence in this case abundantly demonstrates that defendant failed to act in good faith and unselfishly, but was animated by motives of self-interest if not by revenge against his benefactors. He sought individual profit at the expense of his principal, grossly violated a trust relationship, and committed a flagrant breach of duty. The law will not tolerate and emphatically condemns such conduct. . . . In this case it is not wholly a question as to whether defendant had a right to engage in a competing business after he had severed all relation with the company, but is primarily a question of his duty and obligation to refrain from injuring a company of which he was president and a director. An injury of any character would be prohibited in the absence of other adequate remedy such as the facts in this case show.''

We are unable to understand how the majority can say appellant did not occupy a fiduciary relation to appellee, in view of the foregoing quoted authorities, and, as we understand the opinion, it is based on the assumption that such relation did not exist. Perhaps because the relation terminated when he resigned his position, but the authorities hold that the fact that a termination of the relation was had before the confidence and trust were violated is no defense to the suit. Judge SANBORN said so in *Trice* v. *Comstock, supra.* It was not so much a question of whether ''he had a right to engage in a competing business after he had severed all relation with the company, but is primarily a question of his duty and obligation to refrain from injuring a company'' of which he had been secretary, general manager and director. The quoted language is from the Forslund case, *supra.* It must be admitted that, so long as his connection with appellee existed, there was a fiduciary relation, and the authorities cited show that it is no defense for him to resign such relation and then undertake to destroy his former benefactor.

Cases cited and relied on in the majority opinion, such as *El Dorado Laundry Co.* v. *Ford,* 174 Ark. 104, 294

S. W. 393, and *Fulton Grand Laundry Co.* v. *Johnson,* 140 Md. 359, 117 Atl. 753, 23 A. L. R. 420, are not in point. They hold that the names of the patrons of a laundry on a particular route are not trade secrets which will be protected by injunction to prevent a driver employed on such route from utilizing it and soliciting the patronage of such persons when he leaves the service of his employer and enters business for himself. Appellant's connection with appellee is not comparable to that of a laundry driver or a truck driver on an ice delivery route. He was not selling a commodity, but a service to a limited number of clients—only 54 in 10 year's work. Nor was his connection comparable to that of an officer or employee in a department store whose business is the sale of goods, wares and merchandise to thousands of customers.

It is, therefore, my view that the decree of the trial court should be affirmed on direct appeal, but the injunction granted should be extended to three years on the cross-appeal. I am authorized to say that Mr. Justice HOLT agrees with this dissent.