McHaney *v.* McHaney.

4-7743　　　　　　　　　　　　　　190 S. W. 2d 450

Opinion delivered November 19, 1945.

338

*Rhine & Rhine,* for appellant.

*Kirsch & Cathey* and *D. G. Beauchamp,* for appellee.

MILLWEE, J. Lafayette McHaney died intestate November 8, 1908, in Greene county, survived by eleven children and his widow, Jennie McHaney, who was the step-mother of said children. At the time of his death Lafayette McHaney was the owner of considerable property and in settlement of the widow's interest in the estate, the eleven heirs by warranty deed conveyed lot 8, block 8 of Pruett's First Addition to the City of Paragould, Arkansas, to their step-mother. Two business buildings are located on this lot which is the property involved in this suit. Afterwards the widow moved from Paragould to Patoka, Illinois, where she married Mr. Carter and left the above described property in charge

of Bob McHaney, one of the heirs. Bob McHaney acted as the agent of Jennie Carter in renting and looking after the property until his death in 1932. Afterwards appellant, Sam P. McHaney, another step-son of Mrs. Carter, became her agent in renting the property. Appellant was acting as such agent in September, 1939, when he received a letter from Jennie Carter enclosing a letter from R. A. Reynolds of Paragould wanting to purchase the property. Appellant's conduct thereafter affords the basis of this suit.

Appellees filed their complaint on March 3, 1943, against appellant alleging in substance that it was the desire and intention of Jennie Carter that the property involved in this suit return to the McHaney heirs upon her death; that in September, 1939, it was ascertained that R. A. Reynolds was seeking to purchase the property and appellees and appellant had a conference in which it was agreed that appellant would go to Patoka, Illinois, as the agent of all the heirs, including appellees, to have Jennie Carter place the title to the lands in such condition or position that the McHaney heirs would receive same in fee simple upon their step-mother's death; that appellant instead of carrying out the contract between him and the heirs, prevailed upon Jennie Carter to deed the land to appellant individually in disregard of his duty as agent of appellees; that appellant's conduct was a fraud and device to defeat appellees in their rights in the property; and that appellant held the property as trustee of appellees to the extent of their three-elevenths interest therein. A demurrer to the complaint was overruled. Appellant filed his answer specifically denying the allegations of the complaint, but not pleading limitations, laches or the statute of frauds.

The cause was submitted to the trial court on April 3, 1945, and a decree was entered in favor of appellees. The court found that appellant became the agent of the McHaney heirs for the purpose of procuring a will or a deed from Jennie Carter in order that title to the land should pass to the heirs upon her death; that while professing to so act, appellant, in violation of his duties as

such agent, procured a conveyance of the land from Jennie Carter to himself; and that he held an undivided one-eleventh interest in said lands as trustee for each of the appellees. The court further found that appellant had paid out a total of $3,975 in acquiring legal title to the lands, but had enjoyed the possession and use of the property, which had a net rental value of $40 per month, from November 1, 1939, to April 1, 1945; and that appellant had paid $1,862.43 in excess of the credits allowable for the net monthly rentals. As a condition to the vesting of title in each of appellees of their respective interests, it was determined that each of them should pay appellant one-eleventh of $1,862.43, or $169.31. Upon appellant's refusal of a tender of such sums, it was decreed that an undivided three-elevenths of the title to the property be divested out of appellant and vested in appellees, and that appellant receive from the registry of the court the $169.31 found to be due from each of the appellees.

The testimony on behalf of appellees shows that Jennie Carter had repeatedly, through the years, expressed an intention to make arrangements for the property involved in this suit to go to the McHaney heirs at her death. Appellee, J. T. (Jack) McHaney, 78 years of age, testified that in September, 1939, appellant showed him a letter which Jennie Carter had received from Reynolds wanting to buy the property; that appellant told him the best thing the McHaney heirs could do would be to get up to Patoka quick and have Mrs. Carter make a will or deed to the McHaney heirs; that appellant agreed to represent all the heirs and go to Patoka and take care of the matter. Appellant told witness that he had a letter he wanted him to sign showing that it was all right for appellant to come up and get the matter fixed for the heirs; that appellant was in a hurry to get off that night and witness signed the letter without reading it. Witness asked appellant if he had a will for Jennie Carter to sign and appellant pulled some papers out of his brief case and showed them to witness and hurried out. Appellant said there would probably be about $25 expense attached to the trip which it was agreed the heirs should pay. When appellant returned from Illinois and informed witness that he had

procured a deed for the property to himself, witness reminded him that this was not what he had agreed to do. Appellant said he had to look after his own interest, as well as that of the heirs, and would pay the other heirs $2,700 twelve months after Jennie Carter's death.

On cross-examination J. T. McHaney testified that appellant did not tell him Mrs. Carter wanted to sell the property, but such possibility was discussed and appellant was to see that the heirs would receive the proceeds of a sale, if made. They did not discuss the value of the property, but appellant did say he would give $3,600 for it, but witness told him it was worth much more. Witness went to see Mrs. Carter a week after appellant was up there to see what appellant had done. Mrs. Carter did not need money and had not changed her mind about leaving the property to the heirs. Appellant did not tell him that he had a note payable to each of the heirs for $225. Mrs. Carter paid appellant $50 for looking after the property the last time she was in Paragould. The testimony of J. T. McHaney, as to the first conversation between witness and appellant, was corroborated by that of his son and daughter and Farris Stevenson.

Mrs. Effie Fleming testified that she knew all of the parties and was related to none of them; that she saw appellant after his first trip to Patoka and he told her he had been up to see Mrs. Carter in the interest of the heirs. Appellant told her that Mrs. Carter was feeble, had had a stroke, and her mind was not active and she was not capable of taking care of her business; that he had suggested buying the property and settling with the heirs and that J. T. McHaney was the only one causing any trouble.

I. T. Russell, a nephew of the parties, testified that he saw appellant after he had made two trips to Patoka and appellant told him that he wanted to get the property back in the McHaney name and did not want anyone else to get hold of it. Appellant also told witness he made a deal for $2,700 on the first trip, but made a better deal the second trip. Appellant told witness that he wasn't going to pay appellees anything.

Appellee Claude McHaney testified that Mrs. Carter had often expressed her desire that the property return to all the McHaney heirs; that Mrs. Carter visited in the homes of all the appellees on her trips to Paragould, and he knew of no reason she could have for not wanting to treat J. T. and W. W. McHaney the same as the other heirs.

Appellee W. W. (Bill) McHaney, who was 83 years old, testified that he and Jennie Carter were always on friendly terms; that she visited in his home every time she was in Paragould and always said she intended that the property go back to the McHaney heirs at her death. Witness had not objected to the marriage of his father and Jennie Carter, but appellant had, and quarrelled about it for quite awhile. Appellant and J. T. McHaney were visiting in witness' home one night soon after appellant returned from Illinois with the deed. Appellant told J. T. McHaney on that occasion that he was interfering with appellant's business and appellant said, ''I am going to see that you don't get a thing.'' On the same night appellant said to witness and his wife, ''You all keep quiet. I will see that you get yours.'' Mrs. W. W. McHaney and J. T. McHaney gave substantially the same testimony about the conversation.

Appellant testified that Jennie Carter wrote him in September, 1939, that she needed some money and had received letters from Reynolds wanting to buy the property. He did not have the letter, but she wanted him to come to Patoka. He saw his brother, J. T. McHaney, in Stevenson's office and told him about the letter from Mrs. Carter. There were three or four other people present, but he talked with his brother privately. Nothing was said about having Mrs. Carter make a will or any other specific arrangement. His brother, Jack, later came to appellant's office where they again discussed the possibility of her selling the property and appellant told his brother that the only way for Mrs. Carter to have money was for appellant to buy the property as he later did, and his brother agreed; that nothing was said about taking title in the name of the heirs; that they had a third conversation in which Jack told appellant he thought the

property was worth $3,500 or $4,000 and would make a statement to that effect. Appellant wrote the following statement in duplicate which his brother signed: "Dear Miss Jennie Carter, Sam said that Red Reynolds had wrote you wanting to buy your property, and he, Sam, was going up to see you. Said that you wrote him that you did not know its worth. I think about $3,500 or $4,000 cash would be its worth. Should you make a deal with Sam I think it will be OK with all here. J. T. McHancy." He told Jack that he would offer Mrs. Carter $40 per month for life and $3,000 at her death, and this proposition was approved; that Jack understood fully that he was going to buy the property for himself and nothing was said about the heirs paying the expenses of the trip.

Appellant went to Patoka on Sunday and found that Jennie Carter was in need of money for living expenses and was dependent on the Paragould property. He gave her the letter Jack had signed and made the offer which Jack had approved and advised her to think it over until the next morning. Monday morning they discussed the matter again in the presence of his son and Norman Carter, a stepson of Mrs. Carter by her last husband. She accepted his offer to pay $50 per month as long as she lived and $2,700, less his share, to be paid twelve months after her death. She wanted to sell it to appellant cheaper than to anyone else because he had looked after the property for eight years without any charge and she felt she owed him the difference between $3,500 and $2,700 for his service. She executed a warranty deed to appellant which recites a consideration of $2,700 "cash in hand," and a further consideration of $50 per month to Jennie Carter for life. Appellant paid her $200 and executed notes to each of the other ten heirs for $225 payable twelve months after her death. These amounts together with $225 allowed for appellant's share and $25 for expense of the trip made up the $2,700 consideration expressed in the deed. The ten notes to the heirs were turned over to appellant, but it was agreed that Mrs. Carter might recall the notes if she needed money.

Appellant further testified that on returning to Paragould he told J. T. McHaney what he had done and the latter wanted $400 for his part which appellant refused to pay. Soon after J. T. McHaney returned from Patoka, appellant received a letter from Mrs. Carter advising that Jack had been up there and requested appellant to come back. Appellant did not have this letter, but Jack had told her she had no assurance of receiving the $50 per month. Appellant went back the following Sunday with his son and invalid brother, Ed McHaney. Mrs. Carter was angry at Jack and asked appellant for the notes which he gave to her. She wanted more money and requested that he make one note for $2,000, give her $225 cash, and keep $25 for expenses of the trip, which he did; that she wanted to cut Jack and Bill out, but he persuaded her not to and she assigned the $2,000 note to the ten heirs. A written agreement was signed by them dated October 9, 1939, which provided that the note be left in Mrs. Carter's lockbox and mailed to the Security Bank & Trust Company at Paragould by her stepson, Norman Carter, for collection after her death.

Appellant further testified that about a year later Jennie Carter asked him to come back to Patoka. On this occasion Mrs. Carter wanted $400 to set aside for her burial expenses and $200 to be credited to appellant on the note for Mrs. Simpson, one of the heirs, who owed appellant that amount and had requested that such credit be given. A new agreement was written and note executed for $1,400 and appellant gave Mrs. Carter a check for $200 and $200 cash. In assigning the new note to the heirs the names of Mrs. Simpson, Jack and Bill were left off. Witness objected to her leaving Jack's and Bill's names off. Mrs. Carter said Jack had caused her too much worry and it was appellant's understanding that Bill had opposed the marriage of their father to Jennie Carter and she never liked Bill for that reason. Mrs. Carter was 79 years old and in good health when they made the contract in 1939.

The testimony of appellant was corroborated on most points by that of his son, Sam L. McHaney, his brother, Ed McHaney and Norman Carter. According to the testi-

mony of Ed McHaney, the reason given by Mrs. Carter for leaving the names of Jack and Bill off the assignment of the note was that they had never been nice to her while she lived in Paragould before 1912. Other witnesses for appellant placed the value of property in 1939 at $3,500 to $5,000.

Jennie Carter died on September 8, 1942. The $1,400 note was sent to the Security Bank & Trust Company for collection and six of the heirs accepted their $200 share of the note. Appellee Claude McHaney declined to accept his share and joined in this suit with J. T. and W. W. McHaney.

It is argued by appellant that if he was the agent of appellees his duty as such agent was to secure a gift for the heirs in the form of a deed or will, and a violation of this duty would give appellees no cause of action against him because: (1) appellees have not been damaged by the action of appellant, and (2) if appellees had a cause of action, it is barred by laches.

As we understand appellant's first contention, he could have been under no obligation to negotiate a gift because such transaction may only result from a donor's own volition and the very nature of a gift would bar any duty on the part of appellant in the negotiation thereof. An agent, it is argued, could not, therefore, be charged with fraud for any action on his part that might have defeated the gift. We do not understand that appellees' cause of action was based upon an alleged violation of duty on appellant's part to persuade Jennie Carter to execute a gift to the McHaney heirs. The contract of agency which formed the basis of the complaint was that appellant agreed to enter upon a mission for the purpose of determining whether Jennie Carter was willing to do a thing she had already expressed an intention of doing, and which the heirs, under the circumstances, had a right to expect she would do when the contract of agency was made. The complaint of appellees is that appellant acted primarily in his own interests by purchasing the property for himself without making any attempt to perform the obligation of his contract of agency

with the other heirs, and to the prejudice of their interests.

The rule governing the relationship of appellant and appellees is stated in the case of *Walthour* v. *Pratt,* 173 Ark. 617, 292 S. W. 1017, as follows: "Everyone, whether designated agent, trustee, servant, or what not, who is under contract or other legal obligation to represent or act for another in any particular business or line of business, or for any valuable purpose, must be loyal and faithful to the interest of such other in respect to such business or purpose. He cannot lawfully serve or acquire any private interest of his own in opposition to it. This is a rule of common-sense and honesty, as well as of law. The agent is not entitled to avail himself of any advantage that his position may give him to profit beyond the agreed compensation for his services. He may not speculate for his gain in the subject-matter of the employment. He may not use any information that he may have acquired by reason of his employment, either for the purpose of acquiring property or doing any other act which is in opposition to his principal's interest. 21 R. C. L. 825."

The applicable principle is also set out in the case of *Dudney* v. *Wilson,* 180 Ark. 416, 21 S. W. 2d 615, where the court approved the following statement from *Trice* v. *Comstock,* 121 Fed. 620: "Every agency creates a fiduciary relation, and every agent, however limited his authority, is disabled from using any information or advantage which he acquires through his agency, either to acquire property or to do any other act which defeats or hinders the efforts of his principal to accomplish the purpose for which the agency was established." See, also, *Houston Rice Co.* v. *Reeves,* 179 Ark. 700, 17 S. W. 2d 884; and *Lybarger* v. *Lieblong,* 186 Ark. 913, 56 S. W. 2d 760, where this court said: "The fact that the agency is gratuitous does not affect the rule requiring good faith and loyalty on the part of the agent if he has entered upon or assumed the performance of his duties."

Appellant's contention that the cause of action is barred by laches contains much merit and might be well

taken if such plea had been made in the trial court. Appellant did not plead laches in his answer and we do not understand that the case was presented to the trial court on that theory. Laches, like the defense of limitations or the Statute of Frauds, to be available as a defense must be pleaded in the trial court. In the case of *Barrett* v. *Durbin,* 106 Ark. 332, 153 S. W. 265, the court said: "Appellee, Durbin, did not set up laches in the court below as a defense to the suit for specific performance. The evidence was not developed with reference to such defense, and the case was not presented on that theory to the trial court; therefore, he should not be allowed to take advantage of such defense here for the first time." Appellees are, therefore, not barred by laches from maintaining the suit.

It is also insisted by appellant that if he was an agent it was an agency coupled with an interest and he had the right to change or vary his instructions to protect his own interests in the subject-matter of the agency. In discussing the rule which requires an agent to act with the utmost good faith and loyalty for the advancement of the interests of his principal, the textwriter in 3 C. J. S., pages 6-7, says: "It is immaterial, in the application of this rule, that the agency is one coupled with an interest, or that the compensation given the agent is small or nominal, or that it is a gratuitous agency." At page 33 of the same work it is said: "Where the agent's power is coupled with an interest in the subject-matter, unreasonable instructions of the principal, detrimental to the agent's interest, may be disregarded, provided the agent acts in good faith." The right of the agent to disregard instructions where the agency is one coupled with an interest is, therefore, dependent upon the good faith of the agent's action. It was the contention of appellees that appellant failed to exercise good faith in his actions in furtherance of the interests of the heirs. The finding of the trial court was that appellant, while professing to act in the interest of the heirs, procured a conveyance of the property to himself in disregard of his relationship to appellees. Such determination of the issue by the chancellor precludes the supposition that appellant acted

in good faith, and we cannot say this finding is against the preponderance of the evidence.

The testimony in the record is voluminous and we have reviewed it in considerable detail. The issues primarily involve questions of fact which are sharply disputed. In view of the trial court's favored position in testing the credibility of the various witnesses, we are unable to say that his findings on the whole case are against the preponderance of the evidence. The decree is accordingly affirmed.

McHANEY, J., disqualified and not participating.