MARSHALL *v.* IRBY.

4-6639                                                    158 S. W. 2d 693

Opinion delivered February 16, 1942.

*Duty & Duty,* for appellant.

*Earl C. Blansett* and *John W. Nance,* for appellee.

SMITH, J.   Dr. James L. Irby was engaged in the practice of the profession of dentistry in Missouri, when he received overtures from Dr. A. W. Marshall of Rogers, Arkansas, to form a partnership for the practice of that profession in the city of Rogers.  Dr. Marshall then had, and, for some years prior, had had an established practice in that city.  The negotiations eventuated in the execution of a contract the controlling provisions of which are as follows:

"This agreement of partnership entered into this 15th day of September, 1939, by and between A. W. Marshall, hereinafter called 'party of the first part,' and James L. Irby, hereinafter called 'party of the second part,' witnesseth:

"That the parties hereto have agreed and by these presents do agree to enter into and become a partnership upon the following terms and conditions:

.   .   .

"4. The partnership shall become effective as of the date hereof, and shall continue for a period of five years thereafter under the following terms hereinafter set out, unless earlier dissolved by agreement of both parties or by operation of law.

"5. Each of the parties hereto is to furnish his own equipment, tools, instruments, etc.

"6. The interests of the respective parties in this firm are as follows: All operating cost shall be borne equally by the firm. The net profits shall be divided, sixty per cent. to party of the first part and forty per cent. to the party of the second part, this division of net profits to remain in force and effect for a period of two years from the date of said partnership. During the remaining three years of this partnership, the net profits shall be divided equally, fifty per cent. to party of the first part and fifty per cent. to party of the second part. Said division of profits shall be made monthly.

"All outstanding accounts as of the date of this agreement shall not be divided, but shall be solely the assets of the party of the first part.

. . .

"12. Should either party breach any of the agreements herein contained, or, in any manner default, the remaining party may, at his option, declare this agreement at an end and proceed to wind up the affairs of the partnership business.

"13. This agreement may be extended for a period of........................years from the date of expiration hereof by indorsement hereon of such extension by both parties hereto.

"14. Upon the expiration hereof, or earlier termination by dissolution or otherwise, a true and accurate final accounting concerning the affairs of this partnership shall be made and a correct distribution of the assets shall be had within fifteen days after such termination; and all debts and obligations of the partnership shall be paid before said final distribution of assets is made.

"15. Each party hereto reserved the right to dissolve said partnership with or without cause, but said

dissolution shall be made only after having given the other party notice in writing at least ninety days before the time fixed for dissolving said firm.

"16. Upon the expiration of this contract, or, in the event of an earlier dissolution of this agreement, party of the second part agrees that he will not set up an office for the practice of dentistry within the city of Rogers for a period of five years from the date of dissolution or termination of this agreement."

Upon the signing of the contract, Dr. Irby gave up the practice which he then had, and bought additional equipment, costing about $700, to enable him to comply with the contract.

The partnership continued for about a year, when Dr. Marshall gave ninety days' notice of its termination, at the end of which time Dr. Irby removed to another location in the city of Rogers and began to practice his profession on his individual account, whereupon Dr. Marshall sought to enjoin Dr. Irby from practicing dentistry in the city of Rogers. The relief prayed was denied, and from that decree is this appeal.

Dr. Marshall assigned no cause for the dissolution, but relies upon the provisions of § 15 of the contract, which gave either party the right to dissolve the partnership with or without cause. It is not questioned that Dr. Irby performed his part of the contract with competency and fidelity, and that the partnership prospered.

It is shown that the population tributary to Rogers is about ten thousand, and there is only one other dentist practicing that profession in that city, and that there is as much or more dental work than all three dentists can reasonably perform. The testimony shows, without dispute, that Dr. Irby gave up the practice in which he was engaged and incurred an expense of $700 to equip himself to perform the contract.

It is shown by the oral testimony—and we think is fairly inferable from the recitals of § 4 of the contract, copied above—that Dr. Irby assumed, and, upon that assumption, contracted for a partnership for a period of

not less than five years, unless, indeed, he gave some cause for its prior dissolution, and such cause is not claimed or alleged, and this notwithstanding the recital in § 15 that either party might dissolve the partnership with or without cause.

It will be observed that under the contract nothing was bought, and nothing was sold. It relates entirely to the professional and personal services of the contracting parties. There was no sale of good will or anything else, nor was there any contract of employment. On the contrary, Dr. Irby, no doubt, through his connection with the partnership for a period of about a year, added to the good will value, and this value, to which his services have added and contributed, he is asked to surrender without consideration or compensation, this, upon the theory that Dr. Marshall had the right to terminate the contract at any time with or without cause.

There are many cases on the subject of contracts in limited restraint of trade, and a number of these are found in our own reports. Our leading case appears to be *Webster* v. *Williams,* 62 Ark. 101, 34 S. W. 537. In that case the contract of a physician to retire from practicing in the city of Texarkana was enforced by injunction, it being held that the contract was not unreasonable nor void as against public policy. But that was a sale of an established practice for a cash consideration of $250, the retiring doctor agreeing that he would retire from the practice and divert to his vendees such portion of his practice as he could influence.

Here, as we have said before, there was no sale, nor was there any contract of employment. Neither party paid or received anything in consideration for the execution of the contract, except, of course, the profits to be derived from its performance; but these were mutual, inuring to each partner in a defined proportion.

We will not attempt to review the numerous cases on this subject, a great number of which are cited by the annotator in his note to the case of *Granger* v. *Craven,* 52 A. L. R. 1356. The effect of these cases has been sum-

marized by abler writers in Vol. 2, Restatement of the Law of Contract, where at § 515, p. 988, it is said:

"When a Restraint of Trade is Unreasonable. A restraint of trade is unreasonable, in the absence of statutory authorization or dominant social or economic justification, if it (a) is greater than is required for the protection of the person for whose benefit the restraint is imposed, or (b) imposes undue hardship upon the person restricted, or (c) tends to create, or has for its purpose to create, a monopoly, or to control prices or to limit production artificially, or (d) unreasonably restricts the alienation or use of anything that is a subject of property, or (e) is based on a promise to refrain from competition and is not ancillary either to a contract for the transfer of good will or other subject of property or to an existing employment or contract of employment."

We are of the opinion that the restraint imposed upon Dr. Irby is greater than the protection of Dr. Marshall requires, and that it imposes an undue, and, under the circumstances, an inequitable hardship, upon Dr. Irby, as there was no transfer of good will or other subject of property.

We conclude, therefore, that the court correctly denied injunctive relief, and the decree is affirmed.