ORKIN EXTERMINATING COMPANY *v.* MURRELL.

4-8385　　　　　　　　　　　　　206 S. W. 2d 185

Opinion delivered December 8, 1947.

450

*Paul Ginsberg, F. A. Isgrig* and *A. F. House,* for appellant.

*Bailey & Warren,* for appellee.

HOLT, J. Appellant, Orkin Exterminating Company of Arkansas (hereinafter called Orkin) is engaged in the business of pest control, principally in the extermination of rodents, bugs, vermin, termites, etc. It operates in sixteen states, including Arkansas. Necessary to the carrying on of its work, Orkin learned the nature and habits of the insects and rodents, the kind of chemicals and the best compounds to be used in their destruction, without endangering or damaging human beings, domestic animals, furniture, woodwork, etc. For this purpose Orkin maintained a research department where chemicals are mixed and formulae are reported, for their proper application and use. At its own expense it trained its branch managers in the use of these chemicals, as well as new ones coming on the market, and also in new techniques in their application.

Appellee, E. B. Murrell, began working for Orkin in 1935 in Memphis, Tennessee, was specially trained and put to work in pest control. In 1938, he was transferred to Little Rock, made branch manager, and worked for appellant until he entered the Army in 1944. In October, 1945, he was released from the Army and resumed his former position as manager of Orkin's Little Rock office.

under a written contract, or agreement, dated November 1, 1945. This contract, among other provisions, provided:

"Whereas, the Company is engaged in the exterminating, fumigating and termite control business, being a business that requires secrecy in connection with its methods and systems employed by it in eradicating and controlling rats, mice, roaches, bugs, vermin, termites, beetles and other insects; and

"Whereas, for the proper protection of the business of the company it is absolutely necessary and essential that all matters connected with, and arising out of or pertaining to the company's business and the company's methods, and the names of the company's customers be kept secret, and

"Whereas, the territory known as cities of Little Rock, Ft. Smith, Clarksville, Van Buren, Hot Springs, Dumas, Pine Bluff, Camp Robinson, Ark., and a 75 mile radius of each of these said cities has been solicited by the company through its sales representatives and through advertising mediums and a large, valuable and extensive trade has been established and maintained at a great expense to the said company, and

"Whereas, the said company has a substantial amount of customers in the said territory known as cities of Little Rock, Ft. Smith, Clarksville, Van Buren, Hot Springs, Dumas, Pine Bluff, Camp Robinson, Ark., and a 75 mile radius of each of these said cities and the names of said customers are within the exclusive knowledge of the company and are of great value to the company, and

"Whereas, the said Ernest Butler Murrell, being referred to herein as the employee and party of the second part, desires to enter into the employ of said company, and

"Whereas, a great loss and damage will be suffered and sustained by the said employer (referred to herein as the company) if, during the term of this contract or for a period of one (1) year immediately following the

termination of this contract, the said employee should for himself, or in behalf of, or in conjunction with any other person, persons, firm, company, partnership or corporation, call upon, solicit, sell, or endeavor to sell or solicit any customer or customers of the said company, or use any of the methods and systems now employed by the company in eradicating and/or controlling rats, mice, roaches, bugs, vermin, termites, beetles and other insects within the territory'' above described ''or any and all other things and products incidental to the business, or solicit, divert, or take away any such customers or the business or the patronage of the said company during the aforesaid time. . . .

''Now, therefore, the said parties hereto for and in consideration of the premises and the mutual covenants and agreements hereinafter contained, and by them respectively to be kept and performed, covenant and agree as follows:

''1. The said company agrees to employ and does by these presents employ Ernest Butler Murrell as manager, and hereby agrees to pay or have paid to the said employee twenty per cent. (20%) commission on deposits from income from the Little Rock territory or at such wages, salary or commission as may hereinafter or from time to time be agreed upon.

''2. The said employee covenants and agrees that he will at all times faithfully and industriously perform all the duties of the said company which may be required of him and that he will devote his entire time and attention to such duties; that he will keep a true and just account with all customers of the company and will turn in and settle for any and all products, merchandise or other property of the company that may come into his possession by reason of this said employment.''

Other essential sections of the contract, in effect, provide:

3. Murrell agrees that he will not undertake to endorse Orkin's name on checks or other papers nor will he obligate Orkin without first securing its written con-

sent. If requested, Murrell will furnish a fidelity bond in the amount of $1,000.

4. All bids and proposals shall be submitted on regular forms and Murrell will submit sales and office reports to Orkin as it may from time to time request.

5. All orders and contracts shall be subject to acceptance or rejection by the president of Orkin.

6. Orkin shall have the right to withhold any sums due from Murrell and apply the same on his indebtedness to Orkin.

7. Murrell expressly covenants and agrees, which covenant and agreement is of the essence of this contract, that at no time during the term of this agreement or for a period of one year immediately following the termination of his employment, regardless of whether such termination is voluntary or involuntary, will he, for himself or in behalf of any other person or corporation, call upon any customer of Orkin for the purpose of soliciting or selling to such customer any exterminating, fumigating or termite control service for the purpose of eradicating rats, mice, roaches, bugs, vermin, termites, beetles and other insects; nor will he in any way, directly or indirectly, for himself or in behalf of any other person or corporation, solicit, divert or take away any customer of Orkin during the term of his employment or for one year following the termination of this agreement.

8. Murrell further covenants and agrees that during said period he will not, for himself or in behalf of any other person or corporation, engage in the pest control business within the territory above described. He will not, directly or indirectly, solicit or attempt to solicit business or patronage of any person or corporation within the said territory for the purpose of selling a service for the eradication or control of rats, mice, roaches, bugs, etc., and other insects, and such other business and service now engaged in by Orkin. He will not disclose to any person any of the secrets, methods or systems used by Orkin in and about its business.

9. Murrell agrees that he will not, during the term of his employment nor for one year following the termination of such employment, service contracts and accounts or work in the territory above described for any person or corporation, selling any kind of pest control service or any service or products for the extermination and control of rats, mice, roaches, etc., or any other items or products now handled by Orkin or any products incidental to the business of Orkin.

10. It is agreed that the term of employment shall be for a period of not less than three months after this date, provided the employee faithfully performs his duties. After the expiration of three months, the employment may be terminated by either party upon giving fifteen days notice to the other.

Appellee, Murrell, carried on appellant's business as manager until February 15, 1947, when he resigned, and on March 6th thereafter (quoting from appellee's brief) "entered the pest control business for himself contending that the restrictive covenant in the Orkin contract was oppressive, unjust and void."

On March 11, 1947, Orkin filed suit in the Pulaski Chancery Court to restrain Murrell from carrying on his pest control business which it alleged he was doing in violation of the terms of the contract, *supra.*

Appellee answered in which he alleged among other things that the restrictive covenant in the contract was void as against public policy.

Upon a hearing there was a decree which provided "that the defendant, Ernest B. Murrell, be, and he is hereby, restrained and enjoined from soliciting personally or through agents or employees or through other persons, the customers of plaintiff who were serviced by him as an employee or as manager of plaintiff's branch office in Little Rock. Provided, however, that this decree does not prohibit solicitation of business by the defendant by the ordinary and usual advertising methods and means; and provided further that nothing in this decree shall prevent the defendant from engaging in the extermi-

nating, eradication, fumigating or termite control business and its associated services."

From this decree comes this appeal.

On the record presented, it is undisputed that the parties here entered into a written mutual contract wherein appellee, Murrell, expressly agreed that on his part he would not for a period of one year following the termination of his employment solicit customers of appellant, Orkin, or engage competitively in the same line of business within certain territory.

As we view the case on the record, the primary and decisive question presented is whether that contract is valid and enforceable. We think it was and that the trial court erred in holding otherwise.

Appellee admitted the execution of the contract, that he resigned and thereafter "embarked upon his own business of pest eradication and control, that being the business which he is best capable of performing, and in such business has solicited customers generally and in all probability has solicited former customers of plaintiff." The facts disclose that appellee did solicit and procure a large number of appellant's best customers.

As manager of the Little Rock office he had access to all records, customers' lists and credit ratings. He was receiving a 20% commission of the gross intake.

As indicated, *supra,* he received special training to enable him to carry on appellant's work, at appellant's expense.

Appellant does not contend that the contract here involved does not impose a restriction upon appellee, but does contend that the restriction imposed was a reasonable one and therefore valid and enforceable.

The general rule is stated by the Supreme Judicial Court of Mass., Norfolk, in the case of *Quincy Oil Co.* v. *Sylvester et al.,* 238 Mass. 95, 130 N. E. 217, 14 A. L. R. 111:

"The main contention of the defendants is that the contract is void as against public policy. Under modern trade conditions a contract is not void at common law because it imposes restraint upon competition, unless that restraint is unreasonable, and tends to the prejudice of the public. When on considering the contract in the light of the business and situation of the parties and the circumstances with reference to which it was made, it appears that the restraint contracted for is for an honest purpose, is only such as affords a fair protection to the legitimate interests of the party in whose favor it is imposed, and not so large as to interfere with the interests of the public, the restraint is held to be reasonable, and the contract valid," and in our own case, *Edgar Lumber Company* v. *Cornie Stave Company,* 95 Ark. 449, 130 S. W. 452, we said: "A contract in restraint of trade is valid when founded on a valuable consideration, if the restraint imposed is reasonable as between the parties and not injurious to the public by reason of its effect upon trade. Whether or not the restraint is reasonable is to be determined by considering whether it is such only as to afford a fair protection to the interest of the party in whose favor it is given, and not so large as to interfere with the interests of the public."

We think the restraint imposed upon appellee, in the circumstances, was such as would only afford a fair protection to the interest of Orkin.

The very recent decision of the Supreme Court of North Carolina (opinion December 18, 1946) in the case of *Orkin Exterminating Co. Inc.* v. *Wilson,* 227 N. C. 96, 40 S. E. 2d 696, applies, we think, with equal force here. In that case, the facts were similar and the contract involved was in all respects the same in effect as the one here before us, except that the noncompetitive clause was two years instead of one. There, Wilson, after terminating his services with the appellant, Orkin, opened up a competitive business of his own and solicited Orkin's customers. Wilson was the manager of Orkin sales office in Winston-Salem. There, the court said: "It is obvious that in the performance of his duties as such manager, the

employee acquired an intimate knowledge of his employer's business, and had a personal association with his customers, which, when his employment terminated for any cause, would enable the employee, if employed by a competitor of his employer, to injure the business of the latter. We think the covenant is reasonable in its terms and not unreasonable in time or territory. . . . The parties themselves, when the instant contract was made, regarded the restriction as reasonable. They are dealing with a situation of which both were familiar . . . It is limited both as to time and place. We cannot say that the restraint put upon the defendant by his contract is unreasonable as presently applied.''

Appellee relies strongly upon *American Excelsior Laundry Company* v. *Derrisseaux*, 204 Ark. 843, 165 S. W. 2d 598. We think that case clearly distinguishable on the facts. There the restraining period was for five years and not one as here, and as was pointed out, "the contract did not bind either party to continue the relationship for any definite period of time," where as in the present case, the contract bound both parties to a term of employment for not less than three months from the date of its execution. In that case, there was primarily involved a list of customers which appellee, Derrisseaux, had built up on a laundry route and which he solicited after going into business for himself in competition with the laundry company and former employer.

In the present case, trade secrets, special training and confidential information were involved and the facts materially different. "Whether a contract is void, as in restraint of trade, depends on the facts of each case, etc." *Robbins* v. *Plant,* 174 Ark. 639, 297 S. W. 1027, 59 A. L. R. 1128, (headnote 1).

Another case relied upon by appellee was that of *Witmer* v. *Arkansas Dailies, Inc.*, 202 Ark. 470, 151 S. W. 2d 971. Again the fact situation is different. In that case Dailies was engaged in soliciting advertising from manufacturers and Witmer was its manager. He worked under an employment contract, the terms of which made no provision forbidding competition on his part upon

termination of his employment. There, we said that it would abridge competition to restrain Witmer, "especially where the employee had not contracted when entering into the employment to refrain from establishing an independent business of like nature. . . . Certain restrictions have been imposed upon employees when severing their relationship with an employer. For example where the particular business in which he had been employed had trade secrets an employee is not permitted to set up an independent business of a similar nature and use the trade secrets of his employer or confidential information received from his employer in the new or independent business in which he engages, but it is allowable for him to use his experience and knowledge gained during the period of his employment in his independent business."

Appellee voluntarily entered into this mutual contract situation which he now seeks to undo. The situation in which the parties find themselves is of their own choosing. We think the finding of the trial court that the one year restriction was unreasonable was, in the circumstances, contrary to the preponderance of the testimony, and, accordingly, the decree is reversed and the cause remanded with directions to enter a decree granting to appellant the injunctive relief prayed.