McCumber *v.* Federated Mutual Implement & Hdw. Insurance Co.

5-1787                    320 S. W. 2d 637

Opinion delivered February 9, 1959.

*Rose, Meek, House, Barron & Nash,* for appellant.

*Barber, Henry, Thurman & McCaskill,* for appellee.

Ed. F. McFaddin, Associate Justice.   When appellant ceased working for appellee and started in a competing business, appellee sought injunction, claiming the terms of the contract of employment had been violated. The Trial Court granted the injunction; and this appeal ensued.

Appellee, Federated Mutual Implement & Hardware Insurance Company (hereinafter sometimes referred to as ''Federated'' and sometimes as ''appellee''), is engaged in the fire, casualty, and health insurance business, and does business through local agents in many, if not all, of the States.   Appellant, M. C. McCumber, became a local agent for Federated in December, 1950. His territory covered the nine central Arkansas Counties of Pulaski, Faulkner, Conway, Van Buren, Lonoke, Saline, Hot Spring, Garland, and Perry.   A new contract was signed in 1954, but with changes immaterial to this litigation.   Then on January 1, 1957 Federated prepared a new and revised form of printed contract[1]

---

[1] The 1957 contract contained the paragraph which is the basis of the present litigation:

"Salesman agrees that he will not, within a period of two years following the date of the voluntary or involuntary termination of his em-

14

(the one here involved), which McCumber signed. It provided, "This contract may be terminated at any time."

Prior to November, 1956 McCumber had been under the Southwest Division, with headquarters at Dallas, Texas; but in November, 1956 Federated "pulled out of" Texas, Louisiana, New Mexico, and Arizona; so Arkansas was transferred to the Southern Division Office at Atlanta; and thereafter the service rendered by the Division Office to the policyholders in Arkansas became progressively worse. It would take from eleven to 69 days to get a simple policy endorsement. McCumber complained repeatedly at this poor service; and finally, on May 1, 1957, he resigned as local agent of Federated and commenced an insurance agency of his own.

On September 30, 1957 Federated brought this suit, against McCumber, which alleged the provisions of the contract and McCumber's rival agency, and prayed, *inter alia*, that McCumber be enjoined for a period of two years from April 30, 1957 from engaging directly or indirectly as a competitor in the insurance business.[2]

ployment with Employer, either directly or indirectly, by and for himself, or as the agent of another, or through others as his agent:

"(a)   Engage in, or in any way be connected with, the fire, casualty and accident and health insurance business in the territory assigned to him or worked by him under this or under any other previous Contracts of Employment, if any, with Employer;

"(b)   Divulge the names of Employer's policyholders and accounts to any other person, firm or corporation;

"(c)   In any way seek to induce, bring about, promote, facilitate or encourage the discontinuance of, or in any way solicit for and in behalf of himself or others, or in any way quote rates, accept, receive, write, bind, broker or transfer any renewal or replacement of ·any of the insurance business, policies, risks, or accounts, written, issued, covered, obtained (whether through the efforts of the Salesman or not) or carried by the Employer in any territory or territories assigned to the Salesman under this or under any other previous Contracts of Employment, if any, with Employer."

2 The complaint prayed for damages and also that McCumber be enjoined in the nine Counties of Pulaski, Faulkner, Conway, Van Buren, Lonoke, Saline, Hot Spring, Garland, and Perry, from:

"(a)   Engaging in, or in any way being connected with, the fire, casualty and accident and health insurance business;

"(b)   Divulging the names of plaintiff's policyholders and accounts to any other person, firm or corporation;

"(c)   In any way seeking to induce, bring about, promote, facilitate or encourage the discontinuance of, or in any way soliciting for and

Trial in the Chancery Court resulted in a decree which in effect enjoined McCumber from directly or indirectly engaging in the fire, casualty, accident, or health insurance business in Pulaski County (only)[3] until after May 1, 1959. From that decree there is this appeal by McCumber because of the injunction; and there is a cross-appeal by Federated because the Trial Court did not award money damages to Federated. Our holding on the direct appeal makes it unnecessary to discuss the cross-appeal.

Able briefs have been filed reviewing the cases from the earliest times to the present on this matter of contracts in restraint of trade such as this one is denominated. A number of Arkansas cases are cited and discussed; some of them being: *Bloom* v. *Home Ins. Agency*, 91 Ark. 367, 121 S. W. 293; *El Dorado Laundry Co.* v. *Ford*, 174 Ark. 104, 294 S. W. 393; *Robbins* v. *Plant*, 174 Ark. 639, 297 S. W. 1027, 59 A. L. R. 1128; *Witmer* v. *Ark. Dailies, Inc.*, 202 Ark. 470, 151 S. W. 2d 971; *Marshall* v. *Irby*, 203 Ark. 795, 158 S. W. 2d 693; *American Excelsior Laundry Co.* v. *Derrisseaux*, 204 Ark. 843, 165 S. W. 2d 598; and *Orkin Exterminating Co. of Arkansas* v. *Murrell*, 212 Ark. 449, 206 S. W. 2d 185. There are also quoted Law Review articles and statements from various texts and annotations.[4]

In 36 Am. Jur. 554 *et seq.* (Monopolies, Combinations, etc.) § 79, in discussing the restraint of an employee after termination of service, the text reads:

"An employee may, in some situations, bind himself by an agreement that after the termination of the

in behalf of himself or others, or in any way quoting rates, accepting, receiving, writing, binding, brokering or transferring business, policies risks, or accounts, written, issued, covered, obtained (whether through the efforts of defendant or not) or carried by the plaintiff; . . ."

[3] McCumber's contract covered nine Counties. He never worked in but one (Pulaski). The question is argued as to whether the Trial Court could reduce the territory from the nine Counties to the one (that is, Pulaski) and still issue the injunction: the point being made that the Trial Court had no right to reform the contract. We need not go into this point because we reach the conclusion that no injunction should have been issued.

[4] Some of the annotations may be found in 152 A.L.R. 415; 41 A.L.R. 2d 15; and 43 A.L.R. 2d 94.

specified period of service he will not engage in business in competition with his present employer . . . The question whether the agreement will be enforced is to be determined in view of the circumstances of the case . . .

"The fact that the employment is of such a character as to inform the employee of business methods and trade secrets which, if brought to the knowledge of a competitor, would prejudice the interests of the employer, tends to give an element of reasonableness to a contract that the employee will not engage in a similar business for a limited time after the termination of his employment, and is always regarded as a strong reason for upholding the contract. Indeed, there is authority for the view that unless the employee has become possessed of information, the disclosure of which will be prejudicial to the employer, the employee cannot bind himself not to work for a competitor of the employer. Employments which involve acquisition by the employee of confidential knowledge and acquaintance with the employer's clientele are regarded as peculiarly appropriate to restrictions against the use of such knowledge in competition with the employer."

After a careful review of the legal and factual issues, we reach the conclusion that no injunction should have been issued under the state of facts here presented. This case involves neither the sale of a business, nor an employment having trade secrets: so cases of those situations are not applicable. We have here merely a restrictive covenant for two years after cessation from a business, without trade secrets of any kind. Federated's local agents (as McCumber was) send to the Division Office all requests for policy endorsements (such as a mortgage clause or a change of address), and the endorsements are prepared at the Division Office and returned to the policyholder direct, or to the local agent for delivery to the policyholder. Likewise, claims filed with the local agent must be processed at the Division Office. The local agent solicits business; but in servic-

ing the policyholder the local agent is little more than a messenger boy between the policyholder and the Division Office.

The case at bar is in all respects similar to that of *American Excelsior Laundry* v. *Derrisseaux,* 204 Ark. 843, 165 S. W. 2d 598. Federated never had any local agent in Pulaski County until it employed McCumber in 1950. He did spend two weeks studying the business when he commenced working, but he learned no trade secrets (as was in the case of *Orkin Exterminating Co. of Arkansas* v. *Murrell,* 212 Ark. 449, 206 S. W. 2d 185). The telephone directory was McCumber's prospect list; so when Federated's method of handling its business from the Division Office became so poor that McCumber had to resign, he took no more information with him than did Derrisseaux in the laundry case previously mentioned. In *Marshall* v. *Irby,* 203 Ark. 795, 158 S. W. 2d 693, we held that the restraint was void when it was unreasonable. Such is the situation in the case at bar.

Therefore, the decree of the Trial Court is reversed and the cause remanded with direction that the injunction be set aside and the complaint dismissed. All costs of all Courts are taxed against the appellee.

SMITH, J., not participating.