**CREDIT BUREAU MANAGEMENT COMPANY, Plaintiff,**

v.

**Billy J. HUIE, Mrs. Mary E. Parker and the Credit Bureau of Saline County, Inc., Defendants.**

**No. LR-66-C-10.**

United States District Court
E. D. Arkansas, W. D.
May 31, 1966.

Robert V. Light of Smith, Williams, Friday & Bowen, Little Rock, Ark., for plaintiff.

John B. Thurman and Glenn W. Jones, Jr., of Barber, Henry, Thurman, Mc-Caskill & Amsler, Little Rock, Ark., for defendants.

HENLEY, Chief Judge.

This is a suit for declaratory and injunctive relief and for damages brought by plaintiff, Credit Bureau Management Company, a Texas corporation having its principal place of business in Dallas, against Billy J. Huie and Mrs. Mary E. Parker, individual citizens of Saline County, Arkansas, and against The Credit Bureau of Saline County, an Arkansas corporation owned by Mrs. Parker. The declaratory judgment and injunction features of the case have been tried to the Court, and this memorandum incorporates the Court's findings of fact and conclusions of law on those issues.

Basically it is claimed that Huie's present employment as the manager of the debt collection branch of The Credit Bureau of Saline County is in violation of a "Non-Competition Agreement" executed in 1963 by Huie in favor of plaintiff; that his continued employment should be declared illegal and enjoined; and that plaintiff should recover damages which it claims to have sustained on account of Huie's alleged breach of contract. Defendants deny that plaintiff is entitled to relief.

Saline County is located immediately southwest of Pulaski County which latter county includes the Greater Little Rock metropolitan area. The County Seat of Saline County is the City of Benton; according to the census of 1960 the population of the county is 28,956. The county's economy is largely industrial.

In 1960 the defendant Mrs. Mary E. Parker was operating in Benton a credit reporting service known as the Credit Bureau of Saline County; primarily that business supplied credit information to local business and professional men but some collection work was also performed.

Prior to October 1960 there was operating in the Greater Little Rock area in Pulaski County a credit reporting service and collection agency known as The Credit Bureau of Greater Little Rock. That business was owned and operated by Mr. and Mrs. William Arendt. The defendant Billy Huie is a relative of the Arendts and was an employee of theirs in charge of the collection operations; he had been so employed for a number of years.

It now becomes necessary to introduce a Texas partnership composed of J. E. R. Chilton, Jr., Howard G. Chilton, and E. Singleton. In 1960 and thereafter that partnership was engaged on a rather large scale in the business of credit reporting and account collecting in a number of locations in Texas, Arkansas, and elsewhere. The record indicates that in general the business in each locality is carried on by a corporation owned or controlled by the partnership. The formal name of the partnership is Chilton, Singleton & Chilton. For convenience, however, the Court will refer to it simply as the Partnership. The Court will also use the term "Chilton organization" to describe collectively the partnership and the operating corporations.

In the fall of 1960 Partnership bought The Credit Bureau of Greater Little Rock from Mr. and Mrs. Arendt and retained Huie in its employ. As a condition of his continued employment Mr. Huie was required to sign on October 31, 1960, a "Non-Competition Agreement." Under the terms of that agreement Huie was prohibited for a period of five years after the termination of his employment by the Chilton organization from directly or indirectly entering the employ of, or becoming interested in or affiliated or in any manner connected with, any credit reporting bureau or collection business located or serving any locations being served by the Chilton organization, including certain specified locations identified on an exhibit to the agreement. It was stipulated that if the five year restriction should turn out to be legally unenforceable, the period of non-com-

petition would be for such period as might be enforceable, and that if the restriction should turn out to be unenforceable from the standpoint of area, then the area of the restriction would be reduced to enforceable limits.

Although Huie was working in Arkansas when he was hired by Partnership and never worked in any other State after that employment, the record reflects that managerial employees of the Chilton organization are at times transferred from one locality to another for purposes of promotion or for other purposes. The record does not indicate that Huie was employed for any particular period of time, and it appears that his relationship with the Chilton organization was terminable at any time at the will of either side.

By December 1960 Partnership had decided to open a collection agency in Benton. That operation was to be known as Creditors' Service Bureau. On December 5, 1960, John R. Nesbitt, Partnership's general manager in Arkansas, entered into a written contract with The Credit Bureau of Saline County under the terms of which Creditors' Service Bureau was to be known as the Collection Division of The Credit Bureau of Saline County. The two organizations were to occupy the same space, and the collection agency was to have access to the credit bureau's files and records; the two organizations were also to cooperate in other ways. The credit bureau was to receive compensation for its cooperation with the collection agency, including a commission of 10 percent of the annual net profits before taxes of the agency. The contract was to remain in force for a period of five years and was renewable for a like period at the option of Partnership.

By the latter part of December 1960 Partnership had decided to form an Arkansas corporation to be known as C–S–C Management Company and to sell to it the assets of The Credit Bureau of Greater Little Rock. Those transactions were consummated prior to the end of the year, and on December 31, 1960, the corporation bought Creditors' Service Bureau from Partnership.

The collection agency commenced operations in Benton with Huie as its manager. The cooperation between the collection agency and the credit bureau was cordial and after the first few months during which losses were incurred the collection agency earned monthly and annual net profits, with the profit history continuing through the first three quarters of 1965.

In 1963 the Chilton organization decided for certain reasons, including tax considerations, to form Credit Bureau Management Co., the plaintiff in this case. The function of that corporation, at least nominally, was to supply management personnel to the operating reporting services and collection agencies of the organization, including the collection agency at Benton. As compensation for its services to the organization plaintiff was to receive annual fees from the operating agencies, and the fee to be paid by the Benton agency was $12,000 per year. It may be remarked that the corresponding fee for the Greater Little Rock operation was $57,600 per year. Out of those fees plaintiff corporation was to pay the compensation earned by local agency managers, including Huie.

Presumably Huie became an employee of plaintiff in 1963. On October 11 of that year Huie and other agency managers were in attendance at a managers' meeting in Dallas in the course of which all of them, as a condition of continued employment, were required to sign "Non-Competition Agreements" in favor of plaintiff. The agreement which Huie signed, and which is the contract in suit, is identical to the agreement which he signed in 1960 in favor of C–S–C Management Company.

The Chilton organization for some reason failed to exercise its option to renew the contract with the Credit Bureau of Saline County. That contract expired on December 10, 1965, and on December 11 Mrs. Parker advised Partnership that the relationship was being terminated. The collection agency was allowed 20

days within which to vacate the credit bureau's premises, that is to say, the collection agency was required to vacate at the end of 1965.

Mrs. Parker had determined to continue to operate her credit bureau and a collection agency on her own account, and not later than December 21, 1965, she and Huie had agreed that he would quit the employ of the Chilton organization and go to work for Mrs. Parker as manager of the collection division. On the date last mentioned Huie formally resigned his employment.

The record reflects that during 1964 the net profits earned by Creditors' Service Bureau was $13,512.97; the net profit for 1965 was $11,179.93, but during the last quarter of 1965 there was an operating loss of $1,195.40. During the corresponding period of 1964 net profits had amounted to $2,242.17, and during the same period of 1963 the profits were $2,535.59.

At about the same time Huie resigned his position with the Chilton organization a clerical employee of the agency, a Miss Hanley, also resigned.

On or about January 3, 1966, The Credit Bureau of Saline County, which by that time at least was an Arkansas corporation controlled by Mrs. Parker, opened for business with no visible change in operation, location, or personnel. Mrs. Parker was there; Mr. Huie was there in charge of collections, and Miss Hanley had come back to work. During the first week of January the public was notified through advertisements in local newspapers that Mr. Huie was in charge of the collection division, and business was solicited.

Mrs. Parker is well known in Saline County, and Mr. Huie had become well known, at least to creditors and debtors, during the period between 1961 and 1966. Not unnaturally, a substantial number of the clients of Creditors' Service Bureau transferred their accounts to The Credit Bureau of Saline County. In that connection an exhibit introduced by plaintiff indicated that at least $125,-595.69 in accounts has been so transferred, including accounts transferred by the Saline County Memorial Hospital, which amounted to more than $50,000.

The Chilton organization continued its operation in Benton, finding a new location and transferring to that location the manager of its agency at Camden, Arkansas. However, the continued operation has not been profitable at least up to this time, substantial losses having been sustained during each of the first four months of the current year.

It seems evident to the Court that Saline County cannot support two collection agencies, and there is no question that Creditors' Service Bureau is laboring under serious disadvantages in undertaking to compete with the operation of Mrs. Parker and Mr. Huie. There is no doubt, and the Court finds, that the defection of Huie has damaged seriously the business and prospects of the rival Chilton concern.

This suit was commenced on January 21 of the current year. The gist of the complaint is that from about October 1965 to the end of that year Huie and Mrs. Parker unlawfully conspired to damage and mismanage the business of Creditors' Service Bureau, to establish a rival business of their own, and to attract to themselves the clients of the former concern. It is charged that the conduct of Mrs. Parker and of Huie and his employment by the Credit Bureau of Saline County, Arkansas, from and after January 1966, constituted a violation of fiduciary duty owed plaintiff by Huie and a violation of the non-competition agreement which has been mentioned. Both injunctive relief and damages are sought.

In their answer the defendants challenge the jurisdiction of the Court and on the merits deny that plaintiff is entitled to relief. On the merits the position of the defendants is that they have been guilty of no wrongdoing, that the non-competition agreement is void and unenforceable, and that it was executed by Huie under duress.

As to jurisdiction, defendants point out that Creditors' Service Bureau is in fact owned by C–S–C Management Co., and contend that the corporation just mentioned is an indispensable party so that if it is joined as a plaintiff the Court's diversity jurisdiction will be destroyed.

As stated at the outset, the trial to the Court was limited to plaintiff's prayer for declaratory and injunctive relief; the parties did not go into the questions of damages or of any accounting although there necessarily came into the record some evidence which would be relevant to such questions.

■ The Court is satisfied that the plaintiff corporation has standing to seek declaratory and injunctive relief, such standing being based on the fact that plaintiff was the former employer of Huie, on the fact that plaintiff paid Huie's salary, and on the fact that the non-competition agreement signed by Huie ran in favor of plaintiff. To the extent that such relief is sought in this action, C–S–C Management Company is not an indispensable party, and the Court has jurisdiction.

■ On the other hand, the Court is equally convinced that plaintiff has no standing to seek damages or an accounting from the defendants. The Chilton organization set up its corporate network, and the members thereof will not be heard to question the entities of the corporations. The damages resulting from the conduct of Huie have been sustained by the Arkansas corporation, and if defendants are required to account for profits, they must account to that corporation not to plaintiff. It is noted in this connection that the management fees to be paid plaintiff by the operating companies are fixed amounts; they are not percentages of collections or profits. To the extent that the complaint seeks pecuniary relief from defendants it will be dismissed without prejudice to future action in the State courts of Arkansas by C–S–C Management Company.

■ With respect to plaintiff's claim that there was an unlawful and action-able conspiracy between Huie and Mrs. Parker to damage and destroy the business of Creditors' Service Bureau, the Court finds that the existence of any unlawful and actionable conspiracy has not been established by a preponderance of the evidence.

■ It is obvious, of course, that prior to his resignation of his position with the Chilton organization Huie and Mrs. Parker discussed their future plans, and that it was agreed that Huie would go to work for Mrs. Parker. But, as long as Huie violated no duty to the Chilton organization while the employment relationship existed, such discussion and agreement were not in themselves either unlawful or improper.

■ There is evidence that late in 1965 the Powell Loan & Finance Co. of Corry, Pennsylvania, addressed a note of inquiry to Creditors' Service Bureau relative to placing business with that concern; that Huie did not reply to the inquiry until after he had gone to work for Mrs. Parker; and that when he did reply he solicited the business of the Pennsylvania Concern for The Credit Bureau of Saline County. Such conduct on his part was unethical and improper, but it is not sufficient standing alone to show any conspiracy.

On this phase of the case plaintiff seems to rely heavily on the fact that losses were sustained during the last three months of 1965. Defendants explain that loss by saying that during that period there were several serious strikes in the Saline County area, and that the economy of the area was at least temporarily depressed to some extent. Without necessarily accepting that explanation wholeheartedly, the Court cannot say that the evidence preponderates against it. It is to be kept in mind that a mismanagement by Huie of the business of Creditors' Service Bureau would be as likely to injure him in his future operations as it would be to injure Creditors' Service Bureau.

This brings the Court down to what is the real issue in the case, namely whether and to what extent this Court should en-

force the Non-Competition Agreement of 1963, and at the threshold the Court is met with an interesting question of conflict of laws. In answering that question the Court will apply the conflict of laws law of Arkansas.

The problem arises because the contract was executed in Texas but involved an Arkansas employee and enforcement of the contract is sought in a federal court sitting in Arkansas.

Up to a point there is no real difference between the laws of the two States as far as covenants against post-employment competition are concerned. Both States will enforce such covenants where the employer has a real and legitimate need of protection against competitive activities of an employee, and where the restriction is reasonable from the standpoint of time and area. Brown v. Devine, Ark., 402 S.W.2d 669; Little Rock Towel & Linen Supply Co. v. Independent Linen Service, 237 Ark. 877, 377 S.W.2d 34; McLeod v. Meyer, 237 Ark. 173, 372 S.W.2d 220; McCumber v. Federated Mutual Implement & Hardware Ins. Co., 230 Ark. 13, 320 S.W.2d 637; Orkin Exterminating Co. v. Murrell, 212 Ark. 449, 206 S.W.2d 185; American Excelsior Laundry Co. v. Derrisseaux, 204 Ark. 843, 165 S.W.2d 598; Marshall v. Irby, 203 Ark. 795, 158 S.W.2d 693; Weatherford Oil Tool Co. v. Campbell, 161 Tex. 310, 340 S.W.2d 950; Lewis v. Krueger, Hutchinson & Overton Clinic, 153 Tex. 363, 269 S.W.2d 798; Traweek v. Shields, Tex.Civ.App., 380 S.W.2d 131; Bramlett & Co. v. Hunt, Tex.Civ.App., 371 S.W.2d 787; Spinks v. Riebold, Tex.Civ.App., 310 S.W.2d 668, wr. ref.

However, in two significant respects the relevant law of Texas seems to be more favorable to employers than is the law of Arkansas. The Supreme Court of Arkansas looks with extreme disfavor on restrictions on competitive activity for as long as five years, Brown v. Devine, McLeod v. Meyer, Little Rock Towel & Linen Supply Co. v. Independent Linen Service Co., American Excelsior Laundry Co. v. Derrisseaux, and Marshall v. Irby, all supra, whereas such a period does not appear to be particularly distasteful to the Texas courts, Spinks v. Riebold, supra; Martin v. Hawley, Tex.Civ.App., 50 S.W.2d 1105; Latham v. Butler, Tex.Civ.App., 17 S.W.2d 1083. Further, in Arkansas a restraint on post-employment competitive activity by a former employee must stand or fall as written, Brown v. Devine and McLeod v. Meyer, both supra, but it appears that in Texas if the restraint appears unreasonable as to time or area it will be limited appropriately by the Texas courts when enforcement is sought, Weatherford Oil Tool Co. v. Campbell, Lewis v. Krueger, Hutchinson & Overton Clinic, and Spinks v. Riebold, all supra.[1]

Plaintiff contends earnestly that its contract with Huie is governed by Texas law. In that connection counsel points out that not only was the contract executed in Texas, but also that plaintiff performed its own part of the contract in that State, that most of its local agencies are in Texas, and that Huie might well have been transferred from Benton to a Texas location.

Defendants contend, on the other hand, that although the contract was made in Texas, it was but a renewal of an original undertaking entered into in Arkansas, and that Huie was at all times in fact employed in Arkansas and that no consideration had ever been given to moving him to Texas.

As far as the Court knows, the Supreme Court of Arkansas has never been called upon to consider a contract of this type in a conflict of laws context; all such contracts which that Court has considered were made here and were to be

---

1. That under Texas law the contract in suit is valid and enforceable as written is indicated to some extent by the fact that the validity of an identical contract has been upheld by the District Court of Dallas County at the suit of one of the corporate members of the Chilton organization. The Chilton Company, Inc. v. Clarke, Docket No. 77953-F/A, March 19, 1964.

performed here. That would not be of importance in itself if the general Arkansas law of conflict of laws was entirely harmonious as to what law governs in determining the validity and enforceability of contracts.

In determining whether a contract made in one State and to be performed in another is valid, the Supreme Court of Arkansas has at times applied the law of the State where the contract was made; at times it has applied the law of the place of performance, or the law which it appeared that the parties intended to apply, or the law of the State having the most significant contacts with the matter in dispute. The Supreme Court of Arkansas itself has recognized that there has been no consistency in Arkansas with respect to choice of law in determining validity and enforcement of contracts. See Cooper v. Cherokee Village Development Co., 236 Ark. 37, 364 S.W.2d 158. And this inconsistency also has been noted by Arkansas' leading authority on conflict of laws, Dr. Robert A. Leflar. Leflar, The Law of Conflict of Laws, 1959, §§ 124–125.

In 1964 Dr. Leflar published an article in the Arkansas Law Review entitled "Conflict of Laws—Arkansas 1959–64," 18 Ark.Law Review 135 et seq., intended as a supplement to his book written in 1959. In discussing developments in the Arkansas conflict of laws law dealing with contracts the author says (p. 140):

"For the most part, the recent Arkansas cases involving validity of contracts have asserted rather undiscriminately the old *Restatement* view that the governing law is that of the place where the contract was made, not even bothering to distinguish other lines of Arkansas authority which say that the governing law is that of the place of performance or of the place intended by the parties."

However, the article then goes on to analyze Cooper v. Cherokee Village Development Co., supra, and Hutchingson v. Republic Finance Co., 236 Ark. 832, 370 S.W.2d 185, and after doing so comes to the conclusion that what the Supreme Court of Arkansas actually does in practice is to choose the law which will uphold the contract unless the agreement is violative of a strong public policy of the State, e. g. the State's policy against usury, in which case the contract will not be upheld even though it would have been possible logically to do so by another choice of law. 18 Ark.Law Review p. 141. The statement is made that if "our court has free choice among various choice of law rules, it ought to (and does) exercise its choice to achieve results consonant with the truly basic policies which underlie our socio-economic system and therefore underlie our law." (Ibid.)

In view of the state of the Arkansas law just described the function of the Court here is, to put it bluntly, to make as intelligent and informed as possible a guess as to what body of law the Supreme Court of Arkansas would apply were this case before it. Logically, it could apply either Texas law or Arkansas law; or it might base its decision on parts of the law of both States.

Taking into consideration the fact that Huie was employed and paid by a Texas corporation, that the contract was prepared and executed in Texas, that Huie might have been transferred to Texas, or that he might have moved to a location in Texas served by a member of the Chilton organization and might have undertaken there to engage in a competitive activity, the Court thinks that in general the validity of the contract should be determined by Texas law, including the Texas rule that the contractual restrictions may be relaxed if found to be unreasonable. So far, the Court does not think that the application of Texas law would be contrary to any strong public policy of Arkansas.

Judged by Texas law, which in this particular connection does not seem to differ from that of Arkansas, the fact that Huie was continued in the employ of plaintiff was sufficient consideration for his execution of the agreement. Bramlett & Co. v. Hunt, supra; McAnnally, v. Person, Tex.Civ.App., 57 S.W.2d 945, wr. ref. And the Court thinks that the na-

ture of the business of the Chilton organization and the nature of Huie's employment was such as to make it reasonable for plaintiff, acting for the organization, to restrict Huie's post-employment activities, and that it was no undue hardship on him economically to subject him to reasonable restriction, the reasonableness thereof to be measured with respect to both time and area.

The Court puts to one side claims of plaintiff that Huie by virtue of his employment by the Chilton organization gained valuable training and experience, and that he came into possession of knowledge of secret, novel, or unique collection procedures. However, the Court finds that a manager of a local collection agency, such as Huie, tends to form valuable client relationships and to gain personal goodwill. If such a manager leaves his original employ and goes into a competing activity in a city the size of Benton, clients of the former employer tend to transfer their business to the new organization. That has happened in this case, and Creditors' Service Bureau has sustained damage as a result of Huie's employment by Mrs. Parker and unless he is enjoined will continue to sustain damage.

Having determined that it was proper for plaintiff to restrict Huie's post-employment activities to some extent, it becomes necessary to determine whether the restraints actually imposed were reasonable. In making that determination the Court's task is simplified by the fact that plaintiff does not seek in this action to restrain Huie's conduct in any area other than Saline County.

■ Thus, the Court need not consider in any detail the reasonableness of the restraint from the standpoint of area. Clearly, restraint with respect to Benton and Saline County is reasonable. The question of whether he ought to be restrained anywhere else may become the subject of inquiry in some other suit, but it is not before the Court in this case.

■ As to the reasonableness of the time restriction in the contract, the Court will assume that Texas would consider that the five year period of restriction was reasonable. But, this Court believes that the Arkansas Supreme Court would not permit the restriction of Huie's activities for so long a period of time. In the Court's estimation the steady refusal of the Arkansas courts to enforce five year restrictions indicates a strong public policy in this State against restrictions of such length. And the Court thinks that a restriction of more than two years' duration would be deemed unreasonable by the courts of Arkansas.

The argument may be advanced that Arkansas has as strong a public policy against "re-writing contracts" as against restraining post-employment activities for five years, and that the Court cannot with consistency say that Arkansas would adopt the Texas rule in the former respect but would apply Arkansas ideas of reasonableness in the latter.

Ignoring the fact that, as shown, the law of Arkansas in this area has been marked with inconsistency, the Court thinks that a sufficient answer to such argument is that the Supreme Court of Arkansas has not considered a contract like this one where the parties have agreed specifically that it may be revised judicially and where such an agreement accords with the law of the State where the contract was made. In such circumstances the Court cannot say that the Arkansas policy against "re-writing contracts" would be as strong in application to the contract in suit as the policy against restricting competitive activities for five years or longer.

■ Further, assuming that the law of Texas must govern entirely, if it governs at all, it does not follow that this Court, sitting as a court of equity, is required to enforce the contract literally. An application for an injunction is addressed to the sound discretion of the Court, which discretion extends not only to the question of whether an injunction should issue but also as to how far the injunction should go.

The Court rejects the contention of defendants that the parties to the contract never really intended for it to be binding, and further finds that defendants' claim that the contract was procured by "duress" is insubstantial.

The end result which the Court reaches is that Huie must be enjoined from engaging in competitive activities in Saline County for a period of two years, and the Court finds that The Credit Bureau of Saline County should be enjoined from employing him during that period. The Court does not hold, however, that it is necessary to enjoin Mrs. Parker personally; the Court does not find that she has been guilty of personal wrongdoing in her dealings with respect to Huie or the Chilton organization, and she testified that she did not know of the provisions of the "Non-Competition Agreement" until the commencement of this action. Hence, Mrs. Parker will not be enjoined. She should consider herself cautioned, however, that she must not in any way collaborate in or be a party to any violation of the injunction to be issued against the other defendants.

A decree in accordance with the foregoing will be entered.