**E. H. CRUMP & COMPANY and E. H. Crump Companies, Inc., Plaintiffs,**

v.

**Aubrey L. GATEWOOD and Baldwin, Meadors & Associates, Inc., Defendants.**

**Aubrey L. GATEWOOD, Third–Party Plaintiff,**

v.

**E. H. CRUMP OF ARKANSAS, INC., Third–Party Defendant.**

**No. LR–C–80–298.**

United States District Court, E. D. Arkansas, W. D.

Sept. 24, 1980.

Robert L. Light, Friday, Eldredge & Clark, Little Rock, Ark., for plaintiff and third–party defendant.

Allen W. Horne, Little Rock, Ark., for Aubrey L. Gatewood, defendant and third–party plaintiff.

Jack Young, Little Rock, Ark., for Baldwin, Meadors & Associates, defendant.

## MEMORANDUM OPINION

ROY, District Judge.

The instant cause came on for a hearing before the Court on the various motions pending. The Court has agreed to reach the threshold issue of whether an indispensable party is absent so that there may be a determination of whether jurisdiction in this Court will be ousted.

As to the parties, E. H. Crump & Company, Inc., is a Delaware corporation ("Crump–Delaware"). E. H. Crump Companies, Inc., is a Tennessee corporation ("Crump–Tennessee"). E. H. Crump of Arkansas, Inc., is an Arkansas corporation ("Crump–Arkansas"). Baldwin, Meadors & Associates, Inc., is an Arkansas corporation ("Baldwin–Meadors"). Aubrey Gatewood is an insurance agent licensed to sell insurance in Arkansas.

Gatewood was hired by Crump–Delaware to sell insurance in the state of Arkansas, and an employment contract was signed by Gatewood and a representative of Crump–Delaware on May 1, 1975. The contract contained a "covenant not to compete" which prohibited Gatewood from engaging in the insurance business, either directly or indirectly, for a period of 3 years following the termination of his employment with the company. The areas encompassed in this "covenant not to compete" were (1) an area encompassing a 75–mile radius of Memphis, Tennessee (the location of Crump–Delaware which is the principal office of Crump–Tennessee); and (2) an area encompassing a 75–mile radius of Little Rock, Arkansas (the location of the principal office of Crump–Arkansas).

Subsequent to the signing of the employment contract, Crump–Arkansas was incorporated in Arkansas on May 29, 1975. It is undisputed that the reason for the formation and incorporation of Crump–Arkansas was *Ark.Stat.Ann.* § 66–2812 (Repl.1966), which states:

A license shall not be issued to a firm or corporation .unless organized under the laws of this State and maintaining its place of business in this State, nor unless the transaction of business under the license is within the purposes stated in the firm's partnership agreement or the corporation's articles.

In short, the Crump companies as they were then incorporated were not legally able to do business in Arkansas, and it was· as a result of the hiring of Gatewood that Crump–Arkansas was formed.

On May 30, 1980, Gatewood resigned from the employ of Crump and went to work for Baldwin–Meadors. Though the employment contract sets out a requirement of 30 days' notice to Crump if the employment is terminated, Gatewood admittedly gave no notice. Of course, his employment with Baldwin–Meadors in Little Rock would violate the covenant not to compete, if valid. Gatewood claims that plaintiffs first breached an agreement that he would be consulted and have approval of any merger or acquisition of another insurance agency in Arkansas by Crump–Arkansas' merger with the Central Arkansas Insurance Agency, Inc., without the knowledge of Gatewood.

The defendant Baldwin–Meadors has filed a Motion for Joinder of Necessary Party and to Dismiss in which Gatewood has joined. The defendants allege that Crump–Arkansas is an indispensable party to the lawsuit inasmuch as it is the real party in interest, i. e., Gatewood actually worked for Crump–Arkansas–any other interpretation would indicate illegal activity–and even though it is a wholly owned subsidiary of Crump–Tennessee, Crump–Arkansas had the actual interest in Gatewood's employment created by the employment contract. The Motion to Dismiss is based on the fact that to join Crump–Arkansas would destroy diversity and divest this Court of jurisdiction. In *Young v. Garrett*, 3 F.R.D. 193, 194 (E.D.Ark.1953), the Court said:

(1) The absence of indispensable party may be raised by motion to dismiss. (Citations omitted.)

(2) Indispensable parties are those whose interests are so bound up in the subject matter of the litigation and the relief sought that the court cannot proceed without them, or proceed to a final judgment without affecting their interests. (Citations omitted.)

(3) If indispensable parties have been omitted and the making of them parties properly aligned on the basis of their actual legal interest and the apparent result to them would destroy the requisite diversity of citizenship, the causes should be dismissed for lack of jurisdiction. (Citations omitted.)

Rule 19(b) of the Federal Rules of Civil Procedure sets out the tests for indispensable parties:

The factors to be considered by the court include: first, to what extent a judgment rendered in the person's absence might be prejudicial to him or those already parties; second, the extent to which, by protective provisions in the judgment, by the shaping of relief, or other measures, the prejudice can be lessened or avoided; third, whether a judgment rendered in the person's absence will be adequate; fourth, whether the plaintiff will have an adequate remedy if the action is dismissed for nonjoinder.

The Supreme Court of the United States, in *Provident Tradesmens Bank & Trust v. Patterson*, 390 U.S. 102, 88 S.Ct. 733, 19 L.Ed.2d 936 (1968), stated that a four–point analysis, based on Rule 19(b), is necessary for a determination of whether a party is indispensable:

To say that a court "must" dismiss in the absence of an indispensable party and that it "cannot proceed" without him puts the matter the wrong way around: a court does not know whether a particular person is "indispensable" until it has examined the situation to determine whether it can proceed without him. 390 U.S. at 119, 88 S.Ct. at 743.

1. *To what extent a judgment rendered in Crump–Arkansas' absence might be prejudicial to it or to those already parties.*

Neither of the parties can do business in Arkansas. The only company among the Crump companies which can legally transact business in Arkansas is Crump–Arkansas; and while plaintiffs rely on the fact that Crump–Arkansas is a wholly owned subsidiary of Crump–Tennessee and cite several cases in support of this position, the Court finds these citations to be inapposite. "The fact that it is a wholly owned subsidiary of a party already before the court does not negate its indispensability." *Lang v. Colonial Pipeline Co.*, 266 F.Supp. 552, 554

(E.D.Pa.1967). The plaintiffs rely heavily on *Credit Bureau Management Co. v. Huie,* 254 F.Supp. 547 (E.D.Ark.1966). *Huie* was decided prior to the amendment of Rule 19(b) in 1966 which now contains additional factors for the Court to consider in determining whether a party is indispensable. This case is easily distinguishable from the case at bar. In *Huie,* C–S–C Management Co. ("CSC") was merely the parent of the plaintiff subsidiary corporation which conducted business in Arkansas. The employment agreement was with the Arkansas subsidiary and defendant was employed by that subsidiary. It was a case of a corporation seeking to enforce contractual rights against an employee with which it had a contract and to whom the contractual rights were owed. For the case to be of any value to the plaintiffs, the alignment of CSC and the plaintiff in the *Huie* case would have to be reversed. The employment agreement therein was with the subsidiary which was the plaintiff and not the parent company which was left out of the suit. Herein, the employment agreement is with the parent company and one of its other subsidiaries which are the plaintiffs, and the subsidiary which enjoys the benefits of the employment contract is left out. Moreover, the corporations involved in the *Huie* case were corporations which could be and apparently were all licensed in the State of Arkansas, whereas the plaintiffs in the case at bar cannot lawfully be licensed in Arkansas to transact insurance business and, therefore, can only lawfully do business through Crump–Arkansas.

The Court in *Lang, supra,* also stated: ... the plaintiffs have cited no cases to us and our research has disclosed none where the courts have overlooked the separate identity of a wholly owned subsidiary in order to avoid being ousted of its diversity jurisdiction where that party is indispensable or needed for a full and just adjudication of the controversy ...

That Court also stated:

Colonial of Pennsylvania holds the title to the interest in plaintiff's land [a pipeline easement], while Colonial of Delaware advances the money to pay for the realty, makes the improvements, provides the necessary personnel, and generally runs the pipeline business.

It goes without saying that any action to eject the parent from the land would have a definite adverse effect on its subsidiary. The latter's estate in the land as well as its corporate existence is inextricably tied to the operation of the pipeline. If Colonial of Delaware is removed there is little doubt that the easement will be virtually worthless since it was originally condemned simply to facilitate the transportation of petroleum. We have no trouble in finding that Colonial of Pennsylvania is an indispensable party, for any adjudication of the present controversy in its absence would significantly affect its interests and would not be consistent with equity and good conscience. *Id.*

The *Lang* case is similar in many regards to the case at bar, in particular with reference to the statement of the Court in footnote 2 at page 558 where the Court said:

One reason given at the argument for the separate existence of Colonial of Pennsylvania was the fact that Pennsylvania law does not explicitly confer on a foreign pipeline corporation the right of eminent domain.

As previously stated, the legal capacity of a foreign corporation to be licensed or do business in Arkansas is the stated reason for the existence of Crump–Arkansas. Thus, local law dictated a domestic corporation–in each instance if the desired activity was to be accomplished. Crump–Arkansas is a necessary and indispensable party in the same manner that Colonial Pennsylvania was in the *Lang* case. Plaintiffs in the case at bar cannot lawfully be licensed in Arkansas to transact insurance business and therefore can only lawfully do business through Crump–Arkansas.

Public policy considerations are of greater magnitude for insurance activities than for other businesses and contracts, such policy considerations having been codified by *Ark.Stat.Ann.* § 66–1801, *et seq.* (Repl.

1966). See *Dunn v. Phoenix Village, Inc.*, 213 F.Supp. 936 (W.D.Ark.1963), wherein the Court states at page 947:

> Such statutes are adopted as a matter of public policy to further the public interest and their benefits cannot be waived.

To accept plaintiffs' position in effect would be allowing the incorporation of Crump–Arkansas to be no more than a sham. The extensive Arkansas insurance regulations are enforced against Crump–Arkansas and not against the plaintiffs except to the extent that they are prohibited from operating within the State's borders. We also note the fact that Crump–Delaware is a wholly owned subsidiary of Crump–Tennessee has not deterred plaintiffs from bringing suit as two separate bodies corporate. Crump–Arkansas deserves the same consideration.

Therefore, should this Court enter judgment for the plaintiffs, for an injunction and an accounting, while Crump–Arkansas would arguably benefit from the injunction, any funds from an accounting should accrue to the real party in interest, Crump–Arkansas. Should judgment be entered for defendants, Crump–Arkansas would probably be estopped to assert its own claim in State court and would have lost its cause of action without having had any opportunity to assert its rights.

2. *The extent to which the prejudice can be lessened or avoided; and*

3. *Whether a judgment rendered in the absence of Crump–Arkansas will be adequate.*

As pointed out, *supra*, Crump–Arkansas' interests will be compromised regardless of the nature of relief granted. The Court can conceive of no device or remedy to represent adequately the interests of Crump–Arkansas *in absentia*.

4. *Whether the plaintiffs will have an adequate remedy if the action is dismissed for nonjoinder.*

The plaintiffs' remedies in State court, should this action be dismissed, will be identical to the remedies available in this Court. The only difference would be that any rem-

edy will also accrue to the real party in interest, Crump–Arkansas, and, should the State court enter judgment against the plaintiffs, at least Crump–Arkansas will have had an opportunity to assert its own interests. See *Barnett v. Borg–Warner Acceptance Corp.*, 488 F.Supp. 786 (E.D.Ark. 1980).

From the foregoing analysis based on Rule 19(b) of the Federal Rules of Civil Procedure, the Court finds that Crump–Arkansas is an indispensable party. Therefore, defendants' Motion to Dismiss is granted.